778 A.2d 580 (2001)
343 N.J. Super. 338
Sheila WADE, Plaintiff/Respondent,
v.
KESSLER INSTITUTE, Defendant/Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 2001.
Decided July 27, 2001.
*582 John H. Schmidt, Jr., Westfield, argued the cause for appellant, (Lindabury, McCormick & Estabrook, attorneys; John H. Schmidt, Jr., of counsel; Kathleen M. Connelly, on the brief).
Emanuel Needle, Maplewood, argued the cause for respondent, (Kohn & Needle, attorneys; Mr. Needle, on the brief).
Before Judges WALLACE, LINTNER and PARRILLO.
*581 The opinion of the court was delivered by WALLACE, J.A.D.
In this wrongful discharge case, a jury found defendant Kessler Institute breached an implied covenant of good faith and fair dealing and awarded plaintiff Sheila Wade $65,000 in damages. On appeal, defendant contends the trial court erred by: (1) failing to instruct the jury that a finding of bad faith was required for the breach of an implied covenant of good faith and fair dealing claim; (2) failing to require the jury to find that a grievance proceeding would have resulted in plaintiff's reinstatement; (3) denying defendant's motion for judgment notwithstanding the verdict; and (4) allowing plaintiff to recover damages of lost wages in contravention of the exclusive remedy of the Workers' Compensation Act. We reverse and remand for a new trial.
The evidence presented at trial showed that plaintiff began working for defendant in 1982 as a nurse's aide, and eventually became a unit secretary in 1991. In addition to performing her ordinary duties as a unit secretary, plaintiff was asked by a supervisor and agreed to collect money from employees in her unit for various occasions such as weddings, baby showers, and funerals. Plaintiff would tell her co-workers about the collection, and place the money she received in an envelope. She did not put the names of the individuals or the amounts they donated on the envelopes to avoid embarrassing them, but did put the name of the intended beneficiary *583 on the envelope. Once all of the money was collected, she would purchase a card and give the card and the funds collected to the intended recipient.
In March 1996, plaintiff was asked by her supervisor to begin a collection for an employee. Plaintiff began the collection, took an excused medical sick leave for eight days, and completed the collection upon her return to work. Plaintiff also collected for two other employees around the same time.
On April 2, 1996, Joan Alverzo, the director of nursing at the hospital, informed plaintiff she was being suspended for three days due to an impropriety with the money plaintiff was collecting. This was the first time plaintiff's integrity had ever been questioned. After the suspension ended on April 5 plaintiff met with Alverzo to further discuss the issue. Plaintiff brought the three envelopes containing the collection money with her and gave them to Alverzo, along with letters explaining the status of the collections. Alverzo informed plaintiff she was being terminated because plaintiff "collected money way back and did not give it to the patient or person until they came back to [the hospital], [and] was still holding the money." The sole reason given to plaintiff for her termination was the alleged mishandling of the money.
Plaintiff tried to explain the reason she had not given the money to its intended recipients was because she was trying to collect more money to make it a more "respectable amount," but was terminated anyway. Alverzo claimed that one of the envelopes was short $5, but plaintiff denied this. Plaintiff stated there was no way Alverzo could have known this based upon her method for making the collections. Plaintiff testified she was so upset at the time that she was suicidal.
The employee handbook, which all employees received, provided procedures by which employees could present a grievance. Plaintiff drafted letters asking for a hearing on the matter and sent them to Kenneth Atchison, the president of the hospital, Stanley Shepard, the assistant vice president, Robert Geller, vice president of human resources, and the labor board. Plaintiff stated in the letters that she had a grievance and requested a fair hearing. Plaintiff also called Geller's office a few times, but never received a response, in writing or by telephone. She became depressed because her side of the story was never heard and no one would believe her. She claimed the ordeal negatively affected her job search because her "mind [was] not there."
Plaintiff presented the testimony of Dr. Paul J. Kiell, a board certified psychiatrist. Dr. Kiell testified plaintiff suffered from a major depressive disorder. He said it is considered major depression because "she has a sleep disorder, and an eating disorder, and ... loss of pleasure seeking. There's no drive, ... no zest for living." Given a hypothetical that plaintiff testified she suffered "from humiliation, emotional distress, difficulty sleeping, loss of appetite, [and] loss of interest socially," Dr. Kiell opined there would "definitely" be a causal relation to her termination and the accusation of her mishandling funds.
The jury was asked to decide whether plaintiff proved that defendant (1) breached the implied covenant of good faith and fair dealing; (2) breached the implied employment contract; or (3) intentionally inflicted emotional distress upon plaintiff. Following a four-day trial, the jury decided in favor of plaintiff on the breach of the implied covenant of good faith and fair dealing claim and decided in favor of defendant on the other two issues. The jury awarded plaintiff $65,000. Defendant's *584 motion for judgment not withstanding the verdict was denied. This appeal followed.

I
Defendant contends the trial court erred in the charge for breach of the implied covenant of good faith and fair dealing. Specifically, defendant contends the trial court failed to instruct the jury that a breach of the implied covenant of good faith and fair dealing required a finding of bad faith on the part of defendant.
Initially, we note that appropriate and proper jury charges are essential for a fair trial. Velazquez v. Portadin, 163 N.J. 677, 688, 751 A.2d 102 (2000). "Jury charges must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them." Ibid. (internal quotation marks omitted.) However, "[t]he trial judge's instructions must be read as a whole. So long as the charges adequately convey the law to the jury and do not mislead or confuse, we should not interfere." Zappasodi v. Department of Corrections, 335 N.J.Super. 83, 89, 761 A.2d 96 (App.Div.2000)(citing Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 418, 690 A.2d 575 (1997)). Nevertheless, an improper jury instruction may require reversal if the instruction tended to confuse or mislead the jury. See Conklin v. Hannoch Weisman, 145 N.J. 395, 409, 678 A.2d 1060 (1996).
Before applying these principles, we state the basic law regarding the implied covenant of good faith and fair dealing. "[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." Sons of Thunder, supra, 148 N.J. at 420, 690 A.2d 575. Our Supreme Court has stated that "[i]n every contract there is an implied covenant that `neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing.'" Palisades Properties Inc. v. Brunetti, 44 N.J. 117, 130, 207 A.2d 522 (1965) quoting 5 Williston on Contracts, § 670, pp. 159-60 (3d ed.1961). See also Wilson v. Amerada Hess Corporation, 168 N.J. 236, 773 A.2d 1121 (2001).
However, "[i]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." Noye v. Hoffmann-La Roche, Inc., 238 N.J.Super. 430, 434, 570 A.2d 12 (App.Div.), certif. denied, 122 N.J. 146, 584 A.2d 218 (1990). The obligation to perform in good faith exists in every contract including where the contract is terminable at will. Bonczek v. Carter-Wallace, Inc., 304 N.J.Super. 593, 599, 701 A.2d 742 (App.Div.1997), certif. denied, 153 N.J. 51, 707 A.2d 154 (1998).
While we have not developed a definition of good faith and fair dealing for all cases, recently our Supreme Court gave guidance in this area. The Court explained:
What constitutes good faith performance and fair dealing has been the subject of considerable analysis. For transactions involving merchants and the sale of goods, the Uniform Commercial Code has defined good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." N.J.S.A. 12A:2-103(1)(b). The Restatement (Second) of Contracts notes that every contract imposes on each party a duty of good faith and fair dealing in its performance and enforcement. Restatement (Second) of Contracts § 205 (1981). A comment to the Restatement states that "[g]ood *585 faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving `bad faith' because they violate community standards of decency, fairness or reasonableness." Restatement (Second) of Contracts § 205 comment a (1981).
[Wilson, supra, 168 N.J. at 245, 773 A.2d 1121.]
The Court emphasized that "[b]ad motive or intention is essential." Id. at 251, 773 A.2d 1121.
One commentator has described good faith as follows:
Good faith, as judges generally use the term in matters contractual, is best understood as an "excluder"a phrase with no general meaning or meanings of its own. Instead, it functions to rule out many different forms of bad faith. It is hard to get this point across to persons used to thinking that every word must have one or more general meanings of its ownmust be either univocal or ambiguous.
... In most cases the party acting in bad faith frustrates the justified expectations of another ... whether an aggrieved party's expectations are justified must inevitably vary with attendant circumstances. For these reasons it is not fruitful to try to generalize further. It is easy enough to formulate examples of bad faith and work from them. Besides, any general definition of good faith, if not vacuous, is sure to be unduly restrictive, especially if cast in statutory form.
[Robert S. Summers, "Good Faith" in General Contract Law and the Sales Provisions of the Uniform Commercial Code, 54 VA. L.Rev. 195, 262-63 (1968) (footnotes omitted).]
Judge Stein in his concurrence in Noye, noted that "[t]he majority opinion does not define `good faith and fair dealing' .... This is understandable. Concepts such as good faith and fair dealing are chameleonlike in character, necessarily assuming the colorings of the surroundings in which they find themselves." Noye, supra, 238 N.J.Super. at 442, 570 A.2d 12. Judge Stein suggested that the employer breaches the covenant of good faith and fair dealing "where the employer, without an honest belief that good cause for discharge in fact exists, attempts to deprive the employee of the benefit of the employment agreement." Ibid.
Other state courts have attempted to develop a definition for the covenant of good faith and fair dealing. The Alaska Supreme Court explained:
This court has recognized a covenant of good faith and fair dealing in all at-will employment contracts. This covenant does not lend itself to precise definition, but it requires at a minimum that an employer not impair the right of an employee to receive the benefits of the employment agreement. We have also stated ... [t]he covenant of good faith and fair dealing ... includes an objective standard, under which the employer must act in a manner which a reasonable person would regard as fair. The covenant also includes a subjective element. An employer engages in subjective bad faith when it discharges an employee for the purpose of depriving him or her of one of the benefits of the contract.
[Holland v. Union Oil Co., 993 P.2d 1026, 1032 (Alaska 2000)(internal quotation marks and footnotes omitted).]
California has developed a model jury charge for the implied covenant of good faith and fair dealing. The relevant charge provides:

*586 In every contract of employment there is an implied obligation of good faith and fair dealing upon each party to the contract that neither party will engage in conduct for the purpose of, denying to the other the benefits of the contract. If any party to the contract violates that obligation, that party is in breach of the employment contract and is liable for damages.
The plaintiff ... seeks to recover damages based upon a claim of breach of the implied covenant of good faith and fair dealing, arising out of a contract of employment.
The essential elements of such a claim are:
1. There was a contract of employment between plaintiff and defendant;
2. Plaintiff's performance, [unless excused];
3. The defendant, as employer, engaged in conduct, separate and apart from the performance of obligations under the contract, without good faith and for the purpose of depriving the plaintiff, as employee, of rights and benefits under the contract;
4. Such conduct caused plaintiff to suffer injury, damage, loss or harm.
An employer who acts in good faith on an honest but mistaken belief that discharge of an employee is required by a legitimate business reason has not breached the implied covenant of good faith and fair dealing. If you find that defendant honestly believed that the termination of plaintiff was for a legitimate business reason, you must find for defendant even if defendant was mistaken in that belief.
[Cal. Jury Instr.Civ. (8th ed.) 10.35, 10.05, 10.37]
In the present case, plaintiff was an at will employee. She contended that defendant withheld her "reasonably expected rights to a grievance procedure entitled to her by implied contract." To be sure, an implied contract can be found based on an employment manual if the employee can show that termination procedures in the manual could reasonably be understood by an employee to create binding duties and obligations between the employer and employee. Woolley v. Hoffmann-La Roche, 99 N.J. 284, 297-98, 491 A.2d 1257 (1985).
Consequently, plaintiff could recover damages for breach of either an implied contract and/or the implied covenant of good faith and fair dealing so long as the jury found: (1) a contract existed between plaintiff and defendant; and (2) defendant breached the terms of that contract, as expressed in the employee manual; or (1) an implied contract existed between plaintiff and defendant; and (2) defendant breached the covenant of good faith and fair dealing in the contract.
The trial court began its instructions to the jury by summarizing plaintiff's allegations as follows:
Now the plaintiff in this cause of action contends thatthat she was wrongfully discharged from her position at the Kessler Institute. She says that they wrongfullyher contention is that they wrongfully breached their duty of fair dealing, a covenant of fair dealing when they discharged her and the manner in which they discharged her inin not giving her aa review or a-she says a hearing or some procedure to review that.
She also says that her termination violated the actual terms of her employment, her implied employment contract as outlined in an employee handbook. It gave her certain rights.
While it may not be a written contract between the parties, itit listed certain rights that she had and outlined for her *587 and led her to believe in her mind that this was an employment contract, this booklet she had, and they violated provisions of that by not allowing her to have her grievance procedure or a grievance hearing.
After discussing plaintiff's claim of emotional distress, the burden of proof, direct and circumstantial evidence and credibility, the trial court then proceeded to instruct the jury regarding breach of the implied covenant of good faith and fair dealing. The court stated:
Every contract, there's an implied covenant of good faith and of fair dealing, and in this case the plaintiff indicates that thisthe defendant violated that covenant in thein the employment relationship.
The plaintiff alleges that she did not have a fair hearing or a fair grievance procedure, which in fact was actually contrary to thethe manual that's been referred to for resolving work problems.
The procedures that she relies upon are contained in the employment manual, and they provide for a grievance procedure or hearing, and as such plaintiff contends that she was terminated in violation by the company of their own manual and as such it was actually a violation of a covenant of good faith and fair dealing.
The trial court then proceeded to instruct the jury on the implied contract claim, stating:
Additionally, she asserts that the defendantthat the defendant breached the employment contract. Plaintiff's claim is not based upon an individual contract that she had with the defendant but rather upon the personnel manual or employment document that's in evidence before you, and that they violate the provisions of thatthat document, and therefore she's entitled to damages for lostand her damages are limited, as I indicated, to lost incomeI will indicate is lost income.
The court then explained to the jury that it must first determine whether the manual created a contract by examining whether a reasonable employee would believe that the manual was intended to create an enforceable agreement. After explaining how to determine whether a reasonable employee would have believed that the manual included an agreement, the court added:
If youif you determine that the manual did not create a contract between the parties, then there can be no breach of a contract and the plaintiff's not entitled to damages.
If on the other hand you determine that the manual did create a contract between the parties, you must then make the second determination as to whether or not thethe defendant actually breached the contract or breached the terms of the agreement.
The plaintiff claimed that the defendant breached the manual by terming herby terminating her employment without giving her certain rights of review ofof that termination.
You must determine whethyou must determine whether the defendants followed the progressive disciplinary procedures contained in the manual and whether or not it followed the rights of review of any termination.
If the terminationif you determine that the defendant did follow the procedures, then you couldthen you would find that they did not breach the contract.
If on the other hand you findfind that they did not follow the procedures cancontained in the manual, then, of *588 course, you would find that they did breach the employment contract.
Now ifif there is aif you find that there is a violation of the employment agreement, that is that there was eithereither the [sic] breached the covenant of fair dealing or that they failed to supply her with her rights under the employment agreement, you then must determine whether or not thosethat action proximately caused her to lose income.
The jury verdict sheet and the jury's responses to the relevant questions follow:
1. [Did] defendant, Kessler Institute, breach its covenant of [good faith and fair dealing,] when it terminated the plaintiff and failed [to hold] a hearing under the grievance procedures?
Yes X No __ 6-0 X 5-1 __
2. [Did] defendant terminate the plaintiff in violation of the manual outlining the terms of her employment?
Yes __ No X 6-0 X 5-1 __
[If you] answered yes to either question # 1 or # 2, proceed to [question] # 3. If you answered no to both questions # 1 and # 2, [end] your deliberations.
3. [Did the] conduct of the defendant proximately cause loss of [earnings] to the plaintiff?
Yes X No __ 6-0 X 5-1 __
After the charge was given to the jury, and the court asked if there were any objections, defense counsel said, "I believe under the covenant of good faith and fair dealing ... the plaintiff has to prove [defendant] acted without an honest belief that there was good cause to discharge her to have a violation." The court indicated that it would not amend the charge to the jury.
Defendant now argues that the trial court should have instructed the jury that it needed to find bad faith on the part of the defendant in connection with its failure to process the grievance. Plaintiff asserts such an instruction is unnecessary, and that bad faith is not a "necessary element in a good faith, fair dealing action."
In our view, the jury charge was misleading and subject to confusing the jury. The trial court failed to instruct the jury that an implied contract must be found before the jury could find that the implied covenant of good faith and fair dealing had been breached. As noted above, every contract contains an implied covenant of good faith and fair dealing. However, before this issue is addressed, the jury should first determine if there is a contract. This was not done.
The seriousness of the court's omission of the requirement of a contract was exacerbated by the court's decision to instruct the jury on the implied covenant of good faith and fair dealing claim before the implied contract claim. This may well have led the jury to incorrectly believe that the breach of the implied covenant of good faith and fair dealing claim was independent of the requirement for an implied contract to exist. It is possible the jury found that an implied contract existed, that defendant did not breach that contract, but did breach the covenant of good faith and fair dealing. It is just as likely however, that the jury found no implied contract existed and yet improperly decided the implied covenant of good faith and fair dealing was breached.
Further, the jury could have believed it was required to find a breach of the implied covenant of good faith and fair dealing as long as plaintiff was not given her grievance procedure. As noted, plaintiff testified she sent a letter requesting a grievance hearing and called, but never spoke to anyone about it. Defendant presented evidence that it never received the *589 request. The charge to the jury failed to explain that defendant must have received the grievance notice and refused to respond to plaintiff in order to find a breach of the covenant of good faith and fair dealing. The charge as given allowed the jury to return a verdict in favor of plaintiff even if it believed both that plaintiff requested the grievance hearing and that defendant did not receive plaintiff's request, or that defendant did receive plaintiff's request and negligently failed to respond. In sum, we conclude the jury instructions had the clear capacity to mislead the jury and produce an unjust result.
We add one additional point. As noted, there is no model jury charge for breach of the implied covenant of good faith and fair dealing. The trial court's instructions on the implied covenant of good faith and fair dealing claim failed to inform the jury of the elements of such a claim, stating only that "plaintiff contends that she was terminated in violation by the company of their own manual and as such it was actually a violation of a covenant of good faith and fair dealing." At retrial, the court should expand upon the meaning of good faith and fair dealing to make clear that "bad motive or intention is essential." This may be accomplished by referring to the definition of good faith in the UCC (good faith means honesty in fact in the conduct or transaction concerned), or by using the definition adopted by the Alaska Supreme Court, or by adopting Judge Stein's suggested instruction in Noye that defendant acted without an honest belief that there was good cause for failing to give plaintiff a grievance hearing. Further, the definition may be expanded to include a reference to defendant acting in bad faith. We recommend the Supreme Court Committee on Model Civil Jury Charges consider developing a model jury charge for breach of the implied covenant of good faith and fair dealing.

II
Defendant next argues that the trial court erred in failing to require the jury to find, as a condition to an award of money damages, that defendant's decision to terminate plaintiff likely would have been reversed, if plaintiff had been provided a grievance hearing. Defendant urges that because the jury was never required to make that finding, there is no evidence that defendant's failure to process plaintiff's grievance was the proximate cause of her lost earnings. We disagree.
Generally, a plaintiff who is awarded a verdict for breach of contract is entitled to compensatory damages for such losses as may fairly be considered to have arisen naturally from the defendant's breach of contract. Pickett v. Lloyd's, 131 N.J. 457, 474, 621 A.2d 445 (1993); see also Model Jury Charge (Civil), § 6.18 (1993). The measure of damages for breach of an implied employment contract consists of lost wages, including future lost wages. Preston v. Claridge Hotel & Casino, Ltd., 231 N.J.Super. 81, 88, 555 A.2d 12 (App.Div.1989). In Sons of Thunder, the Supreme Court concluded that "lost profits are an appropriate remedy when a buyer breaches the implied covenant of good faith and fair dealing." Sons of Thunder, Inc., supra, 148 N.J. at 425, 690 A.2d 575.
Applying these principles here, we find no fault with the court's instruction on proximate cause. The court charged the jury that if it should find defendant either breached the implied covenant of good faith and fair dealing or breached the implied contract, then it must determine whether that breach proximately caused plaintiff to lose income. The court correctly defined proximate cause, stating that it *590 requires both "but for" causation and that defendant was the "substantial factor" in causing plaintiff's loss. Specifically, the court stated:
Now ifif there is aif you find that there is a violation of the employment agreement, that is that there was eithereither the [sic] breached the covenant of fair dealing or that they failed to supply her with her rights under the employment agreement, you then must determine whether or not thosethat action proximately caused her to lose income.
Now by proximate cause the basic question for you to resolve is whether the plaintiff would have lostwhether the plaintiff's loss of income is so connected with the breach of the employment agreement of the plainby the plainby the defendant that it's reasonable to hold the defendant either wholly or partially responsible for that loss.
By proximate cause I refer to a cause that in the natural and continuance sequence produces that loss and that withoutwithout that particular conduct there would have been nono loss or no loss would have occurred.
Aa person is held responsible for for any loss that results in the ordinary course of events from his or her conduct. This means you must first find that the resulting loss would not have occurred but for the conduct of the defendant, and second, you must find that the conduct of the defendant was substantial factor in bringing about the resulting loss to the plaintiff.
In our view, defendant fails to recognize that the pertinent inquiry was whether defendant's behavior in failing to provide plaintiff with a hearing or grievance procedure proximately caused her injury. If defendant acted to deprive defendant of a grievance hearing, the remedy of furnishing plaintiff with a fair hearing several years later would not make plaintiff whole. Beyond that, if defendant were found to have breached the implied covenant of good faith and fair dealing by failing to follow the grievance procedure, one would not expect defendant to provide plaintiff with a fair grievance hearing. Thus, once the jury determined defendant breached the implied covenant of good faith and fair dealing, and that breach proximately caused plaintiff monetary damages, defendant was liable to plaintiff for her reasonable losses arising from that breach.

III
Defendant claims the trial court erred in denying its motion for judgment notwithstanding the verdict (JNOV) because the clear weight of the evidence showed that plaintiff failed to mitigate damages. Defendant's argument is unpersuasive.
A trial court's denial of a motion for JNOV shall not be reversed unless it "clearly appears that there was a miscarriage of justice under the law." R. 2:10-1. Our review must focus on whether the evidence submitted to the jury, and any legitimate inferences which can be drawn from that evidence, support the jury verdict. Sons of Thunder, supra, 148 N.J. at 415, 690 A.2d 575; Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969). A jury's factual determinations will be disturbed only if a reviewing court finds that the jury could not have reasonably used the evidence to reach its verdict. Sons of Thunder, supra, 148 N.J. at 415, 690 A.2d 575.
In a wrongful discharge case, an employer is permitted to reduce its damages by showing that the employee has earned wages from another employer or could have secured other employment *591 by reasonable efforts. Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J.Super. 437, 455, 358 A.2d 805 (App.Div.) certif. denied, 71 N.J. 503, 366 A.2d 658 (1976); Roselle v. La Fera Contracting Co., 18 N.J.Super. 19, 28, 86 A.2d 449 (Ch.Div.1952). However, mitigation of damages is an affirmative defense, and the defendant has the burden of proving the appropriateness of its application. Goodman v. London Metals Exch., Inc., 86 N.J. 19, 40, 429 A.2d 341 (1981). Defendant may show that a plaintiff has failed to mitigate his or her damages by introducing evidence that: (1) plaintiff made no effort or no reasonable effort to secure employment; and (2) other employment opportunities were available that were comparable to the position that the plaintiff lost. Id. at 34-40, 429 A.2d 341.
Here, plaintiff testified that she is currently unemployed, has not worked since defendant fired her in April 1996, but that she applied for two positions after she was terminated. She also testified she has been severely depressed since the loss of her job. Thus, when she applied for the jobs and had to take application tests, her "mind [was] not there." She also testified that she did not think she could "hold down a job." At the time plaintiff was terminated, she earned $26,000 per year.
In light of plaintiff's testimony, the jury could reasonably have concluded that given her mental state plaintiff made reasonable efforts to secure employment. The jury could have concluded that, in her condition, her application for two jobs constituted a reasonable effort. Moreover, as plaintiff points out, she sought $104,000 in lost wages (because she has been unemployed for four and one-half years), but the jury only awarded her $65,000, or approximately two and one half years of her lost salary. Thus, the jury did reduce plaintiff's damages and considered the reasonableness of her job search effort.

IV
Defendant next argues the trial court erred in permitting plaintiff to recover a verdict for lost wages because her sole remedy was to seek workers' compensation benefits. We find this contention is clearly without merit and requires no discussion. R. 2:11-3(e)(A) & (C). Suffice it to say, this was a breach of contract claim and not subject to the Workers' Compensation Act, N.J.S.A. 34:15-1 to -142.
We reverse and remand for a new trial.