798 A.2d 1251

SHEILA WADE, PLAINTIFF–APPELLANT, v. KESSLER INSTI-
TUTE, DEFENDANT–RESPONDENT, AND JANE DOES 1–10,
JOHN DOES 1–10 AND ABC CO. 1–10 (FICTITIOUS NAMES),
DEFENDANTS.

Argued April 29, 2002—Decided June 13, 2002.

328

330

*Emanuel Needle* argued the cause for appellant (*Kohn & Needle,* attorneys).

*John H. Schmidt, Jr.* argued the cause for respondent (*Lindabury, McCormick & Estabrook,* attorneys; *Mr. Schmidt, Kathleen Connelly–Agnostak* and *Christine M. Martinez,* on the brief).

The opinion of the Court was delivered by

VERNIERO, J.

In this wrongful discharge case, a jury found that an employer breached its covenant of fair dealing when it terminated an employee without a hearing as allegedly required by the company's employment manual. The jury also found that the employer did not violate the terms of plaintiff's employment based on provisions in that same manual. The employer appealed that seemingly inconsistent verdict, and the Appellate Division re-

versed and remanded the matter for a new trial. We now affirm the Appellate Division's disposition, but for reasons other than those expressed by that court.

## I.

The facts are derived largely from testimony and other evidence adduced at trial. From 1982 until 1996, Sheila Wade (plaintiff) worked at Kessler Institute (defendant or employer) ostensibly as an at-will employee. In 1991, she transferred into a secretarial position. A supervisor asked plaintiff whether she would accept the task of collecting money from her co-workers to be distributed to those employees who experienced a birth of a child, a wedding, the loss of a loved one, or similar life events. Plaintiff agreed and collected monies in the ensuing years.

In 1992, plaintiff's supervisors questioned her level of tardiness and her attendance. In March of that year, plaintiff's performance evaluation indicated that she was not reporting to work in a "timely manner[.]" Plaintiff's supervisor noted that plaintiff was "somewhat resistive to constructive time management." The employer placed plaintiff on probation for three months, and her attendance improved. In 1993, the employer placed plaintiff on another three-month probationary period because she had reported late to work on numerous occasions. As a result, defendant deferred plaintiff's scheduled raise pending completion of her probationary period. Eventually, plaintiff's attendance did improve, and she collected her raise.

In spring 1994, plaintiff received another unfavorable evaluation showing that she was late twenty-nine times. The employer initially placed plaintiff on probation for three months, but extended that probationary period for an additional six months after plaintiff had failed to improve her attendance to a satisfactory level. In November 1994, a nurse prepared a memorandum for plaintiff's personnel file stating that plaintiff still had "excessive" absences and that "[a]ny future incidents will result in further disciplinary action up to and including termination." A supervisor

testified that she met with plaintiff in March 1996 and spoke to her about "the decline in her job performance as a whole and her duties."

Around that same time in early 1996, plaintiff began collecting money for three co-workers. Before she completed that task, plaintiff went on approved medical leave for approximately ten days. When she returned, she resumed collections. Plaintiff stated that because the amounts collected were not large she decided to wait until the next payday, when more people might donate funds, before distributing the money to the intended beneficiaries. Plaintiff kept the money in three separate envelopes, each bearing the name of the intended beneficiary.

In April 1996, a supervisor spoke to plaintiff about the collection effort. She informed plaintiff that some workers had expressed concern that their donations had not been distributed. Plaintiff explained the delay and offered to turn over the funds to the supervisor. Although the supervisor responded that it was not necessary for her to take possession of the funds, she suspended plaintiff for three days pending an investigation. During the course of plaintiff's suspension, the supervisor spoke with employees who questioned whether their donations had been properly credited or recorded by plaintiff.

On April 5, 1996, when she returned to work at the conclusion of her suspension, plaintiff met with her supervisor and gave her the three envelopes and a handwritten memorandum for each envelope. Plaintiff also gave the supervisor a separate memorandum stating that she was hurt and upset by the allegations, and that she would no longer collect money for her co-workers. According to the memoranda, one envelope contained forty dollars, and the other two envelopes each contained twenty-eight dollars.

After counting the money, the supervisor informed plaintiff that she was five dollars short in one of the envelopes. The supervisor testified that plaintiff stated that she had borrowed the five dollars. Plaintiff denied making that statement. Plaintiff claimed that, as far as she knew, the amounts in the envelopes were

correct. The supervisor also testified that the envelopes contained a list of donors and that five employees, who had informed her that they had given money, were not listed. Plaintiff denied that the envelopes contained the names of donors.

According to the employer, the supervisor informed plaintiff at their April 5, 1996, meeting that she was being terminated for misallocating funds and for prior tardiness and absenteeism. Plaintiff's written termination form does not indicate any reason other than the alleged misallocation. The form, however, does indicate a numerical evaluation of "4" under the headings "attitude," "performance," "dependability," and "attendance." (Pursuant to defendant's system, an employee is ranked on a scale of one to four, with a one meaning "excellent" and a four meaning "poor.") Plaintiff also acknowledged in a letter (described below) that the supervisor raised absenteeism when orally informing plaintiff of the termination.

Plaintiff wrote a handwritten, seven-page letter requesting that defendant provide her with a "fair hearing ... reaching all proper hands." The letter, which is dated April 6, 1996, presumably refers to the procedures set forth in an employment manual furnished to plaintiff during the course of her employment. In a section entitled "Resolving Work Problems," the manual states in full:

It is the policy of Kessler to expedite the processing of employee complaints or grievances in an expeditious manner. To assure this, any grievance must be presented within (5) days of the event or problem.

The levels for presentation and review of grievances in order of occurrence are:

Department Director

Vice President for Department

Senior Vice President

If the decision reached at any of the three review levels is adverse to the employee, it may be appealed within five (5) days upon the employees [sic] request to the next designated review level.

At the request of the aggrieved party, the records of the grievance proceedings and the decision reached by the Senior Vice President may be further reviewed by the President of Kessler. The decision of the President shall be final, binding and unappealable. Employees are encouraged to utilize the services of the Personnel Department to assist in the reconciliation of grievances.

In a separate section entitled "Discharge," the manual provides in full: "When deemed necessary in the interest of Kessler, Kessler reserves the right to dismiss an employee from its services with or without notice. An employee whom Kessler determines has violated Kessler's rules and regulations may be subject to immediate dismissal without notice."

Plaintiff testified that defendant did not respond to her letter or return telephone calls that she had placed pertaining to the letter. Although she called the human resources vice president at least three times, plaintiff acknowledged that only once did she leave her name. Plaintiff also acknowledged that on the one occasion when she left her name, she merely identified herself and stated that she would call back later. In any event, defendant responded that it never received the letter or any telephone messages from plaintiff.

Plaintiff filed a Law Division complaint alleging various causes of action. She claimed that the employer breached an implied covenant of good faith and fair dealing and the express terms of the employment manual when it terminated her "without just cause" and without providing her access to a grievance procedure. She additionally asserted intentional infliction of emotional distress. (Plaintiff's complaint also alleged racial discrimination, common-law wrongful discharge, negligent supervision, tortious interference, and *respondeat superior* liability for pain and suffering caused by the termination. Those allegations were dismissed prior to trial and are not before us in this appeal.)

Plaintiff's allegation regarding the covenant of good faith and fair dealing generated rulings by two different trial courts. Although it denied defendant's summary judgment motion, the first trial court ordered: "[A]ny claim that the defendant breached the covenant of good faith and fair dealing by failing to afford the plaintiff a hearing is dismissed with prejudice." (The record before us does not reveal the court's rationale for that ruling.) Defendant moved to enforce the first court's ruling before a second judge (the judge who presided over the trial itself), assert-

ing that "the only issue that the jury is to deal with is whether or not [plaintiff] was denied a grievance proceeding, not the ... entire issue of whether she was properly terminated[.]" The second judge denied defendant's motion, stating "I don't think that we can surgically submit it to the jury in that fashion."

Near the conclusion of the trial, the court explained to the parties how it would charge the members of the jury with regard to the contract claims. "First, I will charge them on the breach of a covenant of [ ] fair dealing under [the] employment agreement and then breach of ... [an] implied contract of employment as a result of the personnel manual." The court reiterated, "I will instruct them that if [ ] in fact they find that there was a breach of [an] implied covenant of [ ] fair dealing or a breach of an employment contract" then the jury can proceed to the issue of damages. The court emphasized, "I will charge them [on] the breach of implied covenant of good faith and ... [an] alleged breach of a provision under [the] personnel manual or handbook." Defendant expressed no objection to that portion of the intended charge, even though inclusion of the implied covenant issue conflicted with the first trial court's ruling.

The trial court charged the jury consistent with its prior indications:

> [T]his is a [cause] of action basically seeking damages for termination of an employment agreement or an employment contract, either actual or implied.
>
> The—the plaintiff contends that the defendant breached its covenant of good faith and fair dealing in dealing with her during the course of her employment.
>
> Every contract, there's an implied covenant of good faith and fair dealing, and in this case the plaintiff indicates that this—the defendant violated that covenant in the—in the employment relationship.
>
> The plaintiff alleges that she did not have a fair hearing or a fair grievance procedure, which in fact was actually contrary to the—the manual that's been referred to for resolving work problems.
>
> The procedures that she relies upon are contained in the employment manual, and they provide for a grievance procedure of [sic] hearing, and as such plaintiff contends that she was terminated in violation by the company of their own manual and as such it was actually a violation of a covenant of good faith and fair dealing.

The court then instructed the jury on plaintiff's claimed breach of an implied employment contract:

Additionally, she asserts that the defendant—that the defendant breached the employment contract. Plaintiff's claim is not based upon an individual contract that she had with the defendant but rather upon the personnel manual or employment document that's in evidence before you, and that they violate[d] the provisions of that—that document, and therefore she's entitled to damages for lost—and her damages are limited, as I indicated, to lost income—I will indicate is lost income.

In order to resolve the plaintiff's claim, you must determine first whether or not the personnel manual in fact created a contract between the parties and secondly, whether or not—if the contract did exist, you must determine whether or not the defendant breached that—that contract.

The court also instructed the jury that it should determine whether a contract existed between the parties by deciding "whether a reasonable employee would believe that the manual was intended by the defendant to create an enforceable and binding agreement and obligation between the parties" and, if so, "whether a reasonable employee in reading that manual would believe that it created a binding promise . . . to have a grievance procedure or a grievance hearing." The court also charged the jury in respect of plaintiff's emotional distress claim and damages.

After the court instructed the jury, defendant objected to that portion of the charge that pertained to the implied covenant of good faith and fair dealing. Defendant contended:

Your Honor, with regard to the covenant of good faith and fair dealing, I believe Your Honor's charge on the contract was appropriate, but I believe under the covenant of good faith and fair dealing if [defendant] acted with an honest belief that there was good cause, in other words, the plaintiff has to prove that [defendant] acted without an honest belief that there was good cause to discharge her to have a violation of the implied covenant of good faith and fair dealing.

The trial court made no revisions to the charge in response to defendant's objection.

The trial court also submitted the following verdict sheet to the jury, to which neither party objected:

1. Did the defendant, Kessler Institute, breach its covenant of fair dealing, when it terminated the plaintiff and failed to give her a hearing under the grievance procedures?

Yes ___ No ___ 6–0 ___ 5–1 ___

2. Did the defendant terminate the plaintiff in violation of the personnel manual outlining the terms of her employment?

Yes ___ No ___ 6–0 ___ 5–1 ___

If you answered yes to either question # 1 or # 2, proceed to question # 3. If you answered no to both questions # 1 and # 2, terminate your deliberations.

3. Did the conduct of the defendant proximately cause loss of earnings to the plaintiff?

Yes ___ No ___ 6–0 ___ 5–1 ___

If you answered yes, proceed to question # 4. If you answered no, terminate your deliberations.

4. What amount of money would fairly compensate the plaintiff, Sheila Wade, for her loss of past and future earnings?

6–0 ___ 5–1 ___ $ ___

5. Did the defendant, by its agents and employees, intentionally inflict emotional distress upon the plaintiff?

Yes ___ No ___ 6–0 ___ 5–1 ___

If you answered yes, proceed to question # 6. If you answered no, terminate your deliberations.

6. Did the conduct of the defendant proximately cause emotional distress to the plaintiff?

Yes ___ No ___ 6–0 ___ 5–1 ___

If you answered yes, proceed to question # 7. If you answered no, terminate your deliberations[.]

7. What amount of money would reasonably compensate the plaintiff, Sheila Wade, for the emotional distress inflicted upon her by the defendant?

6–0 ___ 5–1 ___ $ ___

The jury answered "yes" to the first question, finding that defendant had breached its covenant of fair dealing when it terminated plaintiff without a hearing under the grievance procedures. It answered "no" to the second question, finding that defendant did not terminate plaintiff in violation of the terms of her employment as set forth in the same manual that had contained the grievance procedures. The jury answered "yes" to the third question, finding that defendant's conduct proximately caused a loss of earnings to plaintiff. In response to question four, the jury awarded plaintiff $65,000 in damages. Lastly, the jury answered "no" to question five, finding that defendant did not intentionally inflict emotional distress on plaintiff.

Defendant moved for judgment notwithstanding the verdict. In support of that motion, the employer argued that "before an employer can be found to have violated a covenant of good faith

and fair dealing there has to be a determination made by the jury that the employer acted in bad faith or in an unconscionable behavior." Defendant also argued that plaintiff was not entitled to damages because she had not shown that a grievance procedure would have resulted in reinstatement. The trial court denied defendant's motion, stating "it all boiled down to the jury considering whether or not [defendant] treated this particular employee fairly."

In a reported decision, the Appellate Division reversed. *Wade v. Kessler Inst.*, 343 *N.J.Super.* 338, 356, 778 *A.*2d 580 (2001). The court found as a matter of law that the jury could not find defendant liable for breaching an implied covenant of good faith and fair dealing without first finding that an implied contract of employment existed. *Id.* at 350–51, 778 A.2d 580. Because the trial court's charge did not adequately explain that distinction to the jury, the Appellate Division found reversible error. *Ibid.* The panel also concluded that the trial court erred in not instructing the jury on the elements of an implied covenant claim. *Id.* at 352, 778 A.2d 580. Accordingly, the court remanded the matter for a new trial. *Id.* at 356, 778 A.2d 580. We granted plaintiff's petition for certification. 171 *N.J.* 44, 791 *A.*2d 222 (2002).

## II.

### A.

"In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine. An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise." *Witkowski v. Thomas J. Lipton, Inc.*, 136 *N.J.* 385, 397, 643 *A.*2d 546 (1994) (internal citations omitted). There are exceptions, however, to the at-will doctrine. For example, an employer's grounds for termination cannot be contrary to public policy, *Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 71–72, 417 *A.*2d 505 (1980), or based on

impermissible factors such as race. *Witkowski, supra,* 136 *N.J.* at 398, 643 *A.*2d 546 (citing *N.J.S.A.* 10:5–1 to –28 prohibiting discriminatory conduct by employers).

■ An employment manual may alter an employee's at-will status by creating an implied contract between an employer and employee. *Woolley v. Hoffmann–La Roche, Inc.,* 99 *N.J.* 284, 297–98, 491 *A.*2d 1257, *modified on other grounds,* 101 *N.J.* 10, 499 *A.*2d 515 (1985). In *Woolley,* this Court held "that absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." *Id.* at 285–86, 491 A.2d 1257. The Court reasoned that

> when an employer of a substantial number of employees circulates a manual that, when fairly read, provides that certain benefits are an incident of the employment (including, especially, job security provisions), the judiciary, instead of "grudgingly" conceding the enforceability of those provisions, should construe them in accordance with the reasonable expectations of the employees.
>
> [*Id.* at 297–98, 491 A.2d 1257 (internal citation omitted).]

Whether an employment manual creates an enforceable contract is a question of law or fact depending on the given case. We have explained:

> An effective disclaimer by the employer may overcome the implication that its employment manual constitutes an enforceable contract of employment.
>
> . . . .
>
> [W]hen the facts surrounding the content and placement of a disclaimer are themselves clear and uncontroverted, ... the effectiveness of a disclaimer can be resolved by the court as a question of law. Conspicuousness will always be a matter of law. In other cases, the effect of a disclaimer's content will also be a question of law. In some cases, however, just as a jury determines whether an employment manual gives rise to an implied contract, so too may a jury need to decide whether the content of a disclaimer is effective.
>
> [*Nicosia v. Wakefern Food Corp.,* 136 *N.J.* 401, 412, 416, 643 *A.*2d 554 (1994) (internal citations omitted).]

This Court has also stressed that "when no reasonable juror could reach other than one conclusion, the question of whether a document constitutes an implied contract may be resolved in a motion

for summary judgment." *Troy v. Rutgers,* 168 *N.J.* 354, 366, 774 *A.*2d 476 (2001).

Because *Woolley's* holding is based in contract, it does not create an "exception" to at-will employment. *Noye v. Hoffmann–La Roche Inc.,* 238 *N.J.Super.* 430, 434, 570 *A.*2d 12 (App.Div.), *certif. denied,* 122 *N.J.* 146, 584 *A.*2d 218 (1990). Rather, *Woolley* modifies the nature of the employment relationship by imposing an obligation on the employer to abide by the terms of the manual. *Woolley, supra,* 99 *N.J.* at 292, 491 *A.*2d 1257. Thus,

> if a plaintiff can prove that an employment manual containing job-security and termination procedures could reasonably be understood by an employee to create binding duties and obligations between the employer and its employees, the manual will constitute, in effect, a unilateral offer to contract that an employee may accept through continued employment. Only in those circumstances will an employment manual overcome the presumption that the employment is at will.
>
> [*Witkowski, supra,* 136 *N.J.* at 399, 643 *A.*2d 546 (internal citation omitted).]

Under *Woolley* and its progeny, courts will enforce a manual's provisions related to both the grounds for termination and the procedures to be followed when terminating an employee. *Nicosia, supra,* 136 *N.J.* at 409, 643 *A.*2d 554.

Every contract contains an implied covenant of good faith and fair dealing. *Wilson v. Amerada Hess Corp.,* 168 *N.J.* 236, 244, 773 *A.*2d 1121 (2001); *Bak–A–Lum Corp. v. Alcoa Bldg. Prod.,* 69 *N.J.* 123, 129–30, 351 *A.*2d 349 (1976). Under such a covenant, " 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]' " *Bak–A–Lum, supra,* 69 *N.J.* at 129, 351 A.2d 349 (quoting *Ass'n Group Life, Inc. v. Catholic War Vets. of U.S.,* 61 *N.J.* 150, 153, 293 *A.*2d 382 (1972)). Recognizing that same principle in the *Woolley* context, courts have held that a *Woolley* contract contains an implied covenant of good faith and fair dealing like any other employment agreement. *See Noye, supra,* 238 *N.J.Super.* at 432, 570 *A.*2d 12.

A breach of the implied covenant of good faith and fair dealing differs from a "literal violation of a contract[.]" *Bak–A–Lum Co., supra,* 69 *N.J.* at 130, 351 *A.*2d 349; *see also* Richard A.

Lord, *Williston on Contracts* § 38:12 at 423–24 (4th ed.2000) (outlining distinction between implied and express contractual conditions). "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." *Wilson, supra,* 168 *N.J.* at 244, 773 *A.2d* 1121 (citing *Sons of Thunder, Inc. v. Borden,* 148 *N.J.* 396, 419, 690 *A.2d* 575 (1997)). We have cautioned, however, that "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive." *Id.* at 251, 773 A.2d 1121.

### B.

█ "[C]lear and correct jury charges are essential to a fair trial, and the failure to provide them may constitute plain error." *Das v. Thani,* 171 *N.J.* 518, 527, 795 *A.2d* 876 (2002) (citing *State v. Robinson,* 165 *N.J.* 32, 40, 754 *A.2d* 1153 (2000)). We have instructed that "[j]ury charges must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them[.]" *Velazquez v. Portadin,* 163 *N.J.* 677, 688, 751 *A.2d* 102 (2000) (internal quotation marks and citations omitted).

█ As a general rule, an appellate court will not disturb a jury's verdict based on a trial court's instructional error "where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect." *Fischer v. Canario,* 143 *N.J.* 235, 254, 670 *A.2d* 516 (1996). We apply that same standard when evaluating the adequacy of a jury's interrogatories or verdict sheet. *Mogull v. CB Commercial Real Estate Group, Inc.,* 162 *N.J.* 449, 467–68, 744 *A.2d* 1186 (2000).

### III.

### A.

We hold that the trial court committed plain error in its charge and submission of interrogatories to the jury. Our rationale is threefold. First, the court should not have instructed the jury to determine the existence of a *Woolley* contract because the parties essentially did not contest that issue. Second, the first and second interrogatories overlapped in subject matter so that in answering "yes" to the first question and "no" to the second, the jury rendered an arguably inconsistent verdict. Third, the issue of the implied covenant should not have been included in the interrogatory in the first instance, and the inclusion of it had the clear capacity to confuse the jury.

■■■ The parties do not dispute that the employment manual distributed to plaintiff constituted an enforceable contract under *Woolley*. Defense counsel stated in oral argument before this Court, "I tend to agree that in this case the handbook constituted a *Woolley* contract." Counsel continued, "I make this admission because the disclaimer in the handbook was not adequate under the [ ] prior court precedent in this case."

Counsel's acknowledgment is generally consistent with how the employer defended the action at trial. Rather than stress to the jury that the manual did not govern its conduct, defendant contended that plaintiff's firing was based on absenteeism and poor work performance, not solely on plaintiff's handling of the collection envelopes. In essence, defendant sought a jury determination that the employer's asserted grounds for the termination were consistent with the manual's discharge provision, which states, in part, that "[a]n employee whom Kessler determines has violated Kessler's rules and regulations may be subject to immediate dismissal without notice."

Defendant also contended that it never received any grievance request from plaintiff to trigger the manual's prescribed levels of review. Thus, trial counsel argued in summation,

I hope you'll find that in fact the termination in this case was appropriate, and that there was no violation of anything in the handbook, and that Kessler Institute never got a request for a grievance and therefore didn't breach any covenant that it had or any promise that [plaintiff] have a grievance . . . reviewed.

Under those circumstances, the employer did not seriously contest the existence of a *Woolley* contract. As a result, the trial court should have removed that question from the jury.

█ In respect of the overlapping nature of the jury's interrogatories, the first question on the verdict sheet focused, in part, on whether defendant had failed to abide by the grievance procedures, whereas the second question pertained to whether defendant's firing of plaintiff violated the "terms of her employment." Because the grievance provision itself constitutes a "term of employment" in this setting, the first and second interrogatories contained parts of the same question, seeding the ground for the jury's inconsistent findings.

█ Lastly, the implied covenant claim seemed to generate the most confusion, starting with the separate rulings by the two trial courts that spoke to the issue and continuing through the parties' contentions and the trial court's wording of the jury's verdict sheet. Plaintiff's counsel argued before the jury that defendant overstated plaintiff's alleged poor work and attendance record, which was not the true cause of her firing. Counsel argued in his trial summation that the true cause of plaintiff's termination was the alleged five-dollar shortfall in the collection envelope. He thus asserted that the employer breached its "implied promise to act in good faith . . . by firing [plaintiff] after 14 years without just cause." Plaintiff made that same allegation in Count Two of her complaint, asserting:

The employment agreement between the plaintiff, Shelia Wade, and the defendant[ ] contained an implied covenant requiring defendant to fully, honestly and reasonably perform the terms and conditions of the employment agreement. Defendant[ ] breached the covenant of good faith and fair dealing implicit in all employment relationships in the State of New Jersey by terminating plaintiff without just cause.

█ The first sentence of that pleading essentially reflects an accurate statement of the law. In that respect, plaintiff correctly

asserted that defendant had an obligation to discharge its responsibilities under the employment manual in good faith. See *Sons of Thunder, supra,* 148 *N.J.* at 421, 690 *A.2d* 575 (observing "[t]he obligation to perform in good faith exists in every contract"). The second sentence, however, erroneously suggests that in breaching a literal term of the manual, defendant also could be found separately liable for breaching the implied covenant of good faith and fair dealing when the two asserted breaches basically rest on the same conduct.

Plaintiff's termination was governed by an express term of the manual, namely, the provision entitled "Discharge." That provision, as noted above, provides that "[a]n employee whom Kessler determines has violated Kessler's rules and regulations may be subject to immediate dismissal without notice." Plaintiff's allegation that she was terminated "without just cause" in effect raises the question whether defendant's firing of plaintiff constituted a breach of the manual's discharge provision. The jury should have resolved that question within the framework of an alleged breach of a literal term, not as a violation of the implied covenant.

Similarly, the trial court asked the jury on the verdict sheet to determine whether defendant had breached "its covenant of fair dealing, when it terminated the plaintiff and failed to give her a hearing under the grievance procedures[.]" In so doing, it incorrectly invited the jury to find a breach of the implied covenant and a breach of the express grievance provision, when on this record those two claims reflected one and the same alleged breach. Specifically, resolution of the question depended on whether plaintiff had submitted a timely complaint as set forth in the manual's grievance provision, and whether the employer properly had processed that complaint under that same provision. Within that context, there is no analytical basis to include an implied covenant claim among the asserted breaches of the manual's express terms.

Stated differently, defendant's obligation to discharge plaintiff in accordance with the manual and its duty to accord her a three-step grievance review were not implied; they were expressly set

forth in the manual itself. From that perspective, there can be no separate breach of an implied covenant of good faith and fair dealing. In a more straightforward case, the breach of the implied covenant arises when the other party has acted consistent with the contract's literal terms, but has done so in such a manner so as to "have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" *Bak–A–Lum, supra,* 69 *N.J.* at 129, 351 *A.*2d 349 (internal citation and quotation marks omitted). *See, e.g., Wilson, supra,* 168 *N.J.* at 240, 773 *A.*2d 1121 (evaluating whether defendant corporation violated implied covenant in setting gasoline prices to franchisees notwithstanding express contractual provision according "unilateral authority" to corporation in that regard).

To the extent plaintiff contends that a breach of the implied covenant may arise absent an express or implied contract, that contention finds no support in our case law. In that respect, we agree with the court below that "an implied contract must be found before the jury could find that the implied covenant of good faith and fair dealing had been breached." *Wade, supra,* 343 *N.J.Super.* at 351, 778 *A.*2d 580; *see also Noye, supra,* 238 *N.J.Super.* at 434, 570 *A.*2d 12 ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."). Thus, because the gravamen of plaintiff's complaint cannot include an implied covenant claim absent an agreement, we must evaluate that claim within the framework of the terms of the employment manual. In so doing, we perceive no legal or factual distinction between the implied covenant allegation and plaintiff's other *Woolley* claims.

## B.

To recap: The trial court should have given a straightforward instruction on whether the express terms of the grievance or discharge provisions had been breached (those are separate questions that should have been submitted to the jury). The court should not have asked the jury to determine whether the contract

existed in the first instance, nor should it have asked whether defendant had breached the implied covenant of good faith and fair dealing. Accordingly, if the case is retried, the court should instruct the jury along those lines, in addition to giving any other relevant charge or interrogatory. We express no opinion concerning other aspects of the court's instruction, such as the portion related to emotional distress or damages, because those issues are not before us for review.

Lastly, our holding should not be understood as precluding an employee in an appropriate case from pleading alternative claims. When supported by the facts, a jury may determine whether an employer has breached the express terms of a *Woolley*-type contract, and if not, whether the employer nonetheless has breached the implied covenant of good faith and fair dealing. For the reasons already stated, that is not this case.

## IV.

As modified, the judgment of the Appellate Division is affirmed, and the matter is remanded to the Law Division for further proceedings consistent with this opinion.

*For affirmance and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—7.

*Opposed*—None.