IN THE MATTER OF CLIFFORD N. HERBSTMAN, AN ATTORNEY–AT–LAW.

Argued September 9, 1980—Decided November 3, 1980.

*Richard J. Engelhardt,* Staff Attorney, argued the cause for complainant Disciplinary Review Board.

*Irwin I. Kimmelman* argued the cause for respondent (*Kimmelman, Wolff and Samson,* attorneys).

PER CURIAM.

We are satisfied, based on our own independent review of the record, that the factual findings and conclusions of the Disciplinary Review Board are correct and we adopt them. They read as follows:

Disciplinary proceedings commenced in this matter on April 4, 1978 upon the filing of an ethics complaint against respondent by the Safeco Insurance

Company of America. The complaint alleged that respondent had engaged in unethical and unprofessional conduct in his representation of the Ken Monk Construction Corporation (KMCC), Ken Monk individually and Safeco. Hearings were held before the District X Ethics Committee, which resulted in the Committee issuing a presentment finding that respondent had violated *DR* 1–102(A)(4), (5) and (6) and *DR* 5–105(B). Upon a review of the full record the Board concludes that the Committee's determination is supported by clear and convincing evidence.

The record discloses that commencing in 1972 and extending through 1977, Safeco acted as surety bonding company for KMCC, a construction company whose principal shareholder was Ken Monk, with respect to several construction contracts, including a project at the Saddle Brook Mall which was owned by ASC of Moorestown, Inc. During this period respondent served both as attorney for KMCC and Ken Monk individually. On at least one occasion he also represented Safeco.

In early 1976 ASC advised Safeco that certain items had not been completed on the Saddle Brook Mall project and that absent completion the balance owed by ASC would not be released. In order to attempt to resolve these difficulties several meetings were held in September 1976 involving representatives of ASC, Safeco and Ken Monk, culminating in a meeting at respondent's office on September 28, 1976, at which respondent, Ken Monk and three representatives of Safeco were present. As a result of this meeting an agreement was reached, confirmed by respondent's letter of September 29, 1976, whereby respondent consented to hold all monies received from ASC on the Saddle Brook project and from Emery Air Freight on another unrelated project and to disburse such funds in accordance with the following priorities; first on account of attorneys' fees "not to exceed $5,000 per recovery" and second "on claims of subcontractors and/or materialmen relative to each job". Respondent included in his confirming letter a final statement to the effect that he would not bear responsibility "for any supervening intervening legal process which impedes the

ability to disburse monies in accordance with the foregoing". Based on the fact that Safeco now felt assured that monies paid by ASC would be held by respondent and disbursed in accordance with their agreement and not used by KMCC to pay obligations arising from other projects, Safeco issued ASC a consent of surety to final payment.

Arbitration hearings were held commencing on September 29, 1976, as a result of which ASC paid balances in the amount of $49,065.18 to respondent in December 1976. Respondent deposited these monies in a special account designated "Clifford N. Herbstman, Trustee" in a savings and loan association.

Subsequent to the initial deposits, monies were disbursed from the account to pay respondent an agreed upon fee of $4,340 and to settle a claim arising out of the ASC project, both in compliance with the September 28, 1976 agreement.

In May 1977 respondent requested that Safeco agree to payment of additional fees to him out of the trustee account. He informed Safeco that KMCC and Ken Monk approved such payment. A representative of Safeco thereafter communicated with respondent by telephone on a number of occasions and indicated that such an arrangement would not be satisfactory.

A formal response to respondent's request was made by Safeco in a letter dated July 25, 1977, in which Safeco requested that respondent forward the balance in the trust account to it. On August 24, 1977, respondent wrote a letter to Safeco in which he criticized Safeco's handling of the matters, declined to forward the trust money on the ground that it belonged to KMCC and renewed his continuing request that his fees be paid out of these funds.

Safeco thereafter referred the matter to counsel, who responded by letter of September 2, 1977, setting out the legal basis for Safeco's claim to the trust money. Thereafter, in September 1977 correspondence was exchanged in which the parties reasserted their respective positions.

On October 11, 1977, Herbstman wrote to counsel for Safeco, forwarding copies of bills which he had submitted to KMCC, and indicating that the remainder of

the trust monies would be released to Safeco if it authorized respondent to invade the account for approximately $7,650 in fees. By letter of October 25, 1977, counsel for Safeco declined payment of respondent's fees and restated its demand for the funds in the trust account. On November 1, 1977, respondent replied with what proved to be the last letter in this exchange, further challenging the basis for Safeco's claim.

It appears that Safeco felt that no further purposes would be served by continuing correspondence. Accordingly, respondent was added as a third party defendant in three pending suits arising under the ASC project.

In December 1976 respondent had negotiated a settlement on behalf of KMCC in a civil suit instituted by the Carroll Manufacturing Company. The judgment implementing the settlement was entered on December 8, 1976, in the amount of $55,000. As a condition of settlement the parties agreed that Ken Monk personally would purchase the judgment for $15,000. To this end an assignment of judgment was not recorded until June 27, 1977, during the period in which KMCC's and respondent's dispute with Safeco concerning the aforementioned trust funds was taking place.

On November 9, 1977, several days after respondent had been notified about the third party actions being filed against him by Safeco to gain the benefit of the monies in his trust account, Jerome I. Goer, Esq., respondent's former law partner, acting as attorney for Ken Monk as assignee of the Carroll Judgment, caused a writ of execution to be issued and levy made on the monies being held by respondent in the trust account set up under the September 28, 1976 agreement.

Thereafter, on November 16, 1977, Goer filed a Notice of Motion seeking an order directing respondent's bank to turn over to the sheriff of Morris County $39,369.57, which represented the total sum remaining on deposit in the account. Although respondent had been served with this notice on or about November 15, 1977, at no time did he give Safeco or anyone related to Safeco any notice of

the service or the existence of any proceedings seeking the turn–over of funds brought by Goer on behalf of Ken Monk.

Moreover, on November 17, 1977, respondent filed a certification in the turn–over proceedings wherein he certified that he maintained the account in question, verified the balance as "belonging to" Ken Monk Construction Corp. and corroborated Goer's affidavit filed in support of the turn–over motion. His certification identified the funds held in his special account as constituting funds given to him to hold in trust by KMCC.

Respondent testified that the certification was filed voluntarily because he thought it to be his "responsibility as an officer of the court to tell the court how much money I had and that it was Ken Monk Construction Corp.'s money".

On December 2, 1977, the Honorable Thomas F. Dalton, J.S.C., entered an order directing respondent's bank to turn over the funds in question to Ken Monk. No notice of the turn–over was given to Safeco by respondent. In this regard respondent testified that he felt neither an obligation to notify Safeco of the turn–over proceeding nor Judge Dalton of Safeco's claim.

The first definite information received by Safeco regarding the situation occurred during a deposition of respondent on January 24, 1978, taken in conjunction with Safeco's third party [sic] against respondent. However, even at that deposition respondent neglected to reveal that he had voluntarily filed a certification in the turn–over proceeding. Nor was a copy of the certification produced in response to the request for production of all papers.

Notwithstanding his claim that KMCC owed him some $20,000 for legal services, respondent did not object to the turn–over, did not bring the indebtedness to the attention of his former law partner, Goer, and did not assert an attorney's lien before Judge Dalton. In fact, respondent testified that he received nothing from Ken Monk out of the proceeds of the account or otherwise after December 21, 1977. However, in the fall of 1977 Ken Monk did provide respondent with a

second mortgage on Monk's residence which subsequently was liquidated and as a result of which respondent was paid.

## CONCLUSION AND RECOMMENDATION

The hearing committee below found that both in his continuing to administer trust funds after an irreconcilable conflict had developed between KMCC and Safeco, and in his conduct in the proceedings seeking a turn—over of such funds to Ken Monk individually, respondent committed serious violations of the Code of Professional Responsibility. We agree.

The contract balances from the ASC project had been placed in respondent's custody for the purposes stated in his letter of September 29, 1976. His agreement to accept the funds under those circumstances created a duty running from respondent to Safeco, as well as KMCC, that the funds would not be utilized inconsistently with the stated purposes. Safeco agreed to this procedure because it believed it could rely on respondent to treat its interest in the funds with such fairness as is to be expected from a member of the legal profession acting as a trustee.

On July 25, 1977, Safeco demanded that respondent forward the balance of funds in the trust account. Respondent advised Safeco by letter dated August 24, 1977, that the money belonged solely to KMCC and that he would not comply with Safeco's demand. Although possibly earlier, but at least as of August 24, 1977, respondent was faced with an irreconcilable conflict of interest which mandated that the trust funds he [sic] placed in the custody of a totally impartial party. By failing to take any affirmative action to relieve himself of his irreconcilable conflict and insure that the rights of Safeco, as well as KMCC, would be protected, respondent violated DR 1–102(A)(4), (5) and (6) as well as the spirit of DR 5–105(B).

Thereafter, respondent's misconduct in this matter was compounded by his failure to advise Safeco, when notified by the sheriff's office in early November 1977, of the levy that his former law partner had caused to be made, on behalf of Ken Monk, on the trust account funds held by him and of the subsequent application for an order directing that such funds be turned over to the sheriff.

The notice of motion which respondent received in the turn–over proceedings referred to the funds which he held in trust as "being held for the benefit of and belonging to" KMCC. Served on respondent concurrently with the notice of motion was an affidavit of Jerome Goer in support of the motion which also referred to the trust funds in the same terms.

After being served with these papers respondent promptly and voluntarily filed a certification in support of the turn–over motion in which he certified that he had read the Goer affidavit and that the "facts therein contained are true". At no point in the certification or elsewhere did respondent bring to the attention of the court that Safeco had been making continuing demands for the funds, that respondent was a third party defendant in as many as three cases wherein Safeco was looking to the funds to satisfy judgments or that the funds had come into his possession as an escrow agent or fiduciary.

Still further, in certifying the truth of the facts covered in Goer's affidavit, respondent certified that the funds were "belonging to and for the benefit of" KMCC. The Board finds that at that stage in the matter such a certification, without apprising the court of the origin of the funds and of Safeco's claim thereto, was misleading and deceitful and is thus evidence of further misconduct on the part of respondent. An attorney who files an affidavit or certification with the intent or knowledge that it will be relied upon by a court is under the highest ethical obligation to insure that the certification is complete and will not tend to mislead the court.

Respondent has defended his conduct by asserting that it was his position throughout the matter that the funds he held in his special trust account belonged solely to KMCC, that Safeco had no valid interest in them, and that he therefore owed no duty whatsoever to Safeco in regard to the turn-over proceedings instituted by Ken Monk. However, the evidence demonstrates that such was clearly not the case, nor even his real understanding of the matter.

As detailed earlier, on May 18, 1977, respondent wrote to Safeco requesting permission to allow him to receive additional legal fees from the funds he held in trust. He further advised Safeco that Ken Monk had previously agreed to his request on behalf of KMCC. Surely this letter was not the act of an individual who felt that Safeco had no interest in these trust funds.

Later, after Safeco refused to acquiesce to his request for payment of additional fees and demanded that he transmit the funds to Safeco, respondent stated that Ken Monk also demanded the monies but that he had refused to remit the proceeds of the trust account to him. Again, this action is inconsistent with respondent's claim that the monies belonged solely to KMCC and that Safeco had no interest in them.

Of final note is respondent's letter of October 11, 1977, to Safeco's counsel wherein he indicates that if Safeco would authorize payment of his legal fees from the trust funds, the differences between the parties would thus resolve themselves and the money in question could then be transmitted to Safeco. Again, if the trust fund monies belonged indisputably to KMCC, why would respondent's client be willing to voluntarily release the remainder of the funds, which would then exceed $30,000, to Safeco?

The Disciplinary Review Board recommended that respondent be suspended from the practice of law for six months.

The respondent presented in his appendix certain documents which were not in evidence, consisting of copies of two memoranda from the office of the Clerk of the Superior Court and ten letters relating to respondent's attempts to file the assignment of the Carroll Manufacturing Company judgment to Ken Monk. Normally we would disregard information submitted in this manner which is violative of our Rules. R. 1:20–4(a). However, respondent in his oral argument before the Disciplinary Review Board referred to the reasons for the delay in recordation. Because of the importance which respondent ascribes to this material, we have considered it. Accepting the contention that respondent attempted to file the assignment in December 1976

does not affect our conclusion. The fact remains that the attempt was made to satisfy that judgment by levying on the trust funds in respondent's hands in November 1977.

Safeco's position with respect to those funds had been made perfectly clear to respondent. Relying on a general indemnity agreement made in November 1974, Safeco's counsel claimed in a letter to respondent dated September 2, 1977 that Safeco had an absolute right to the funds. This position was restated in letters to respondent dated September 26, 1977 and October 25, 1977. On November 4, 1977, respondent received a third party complaint in which Safeco as the third party plaintiff charged that respondent was holding "as trust funds certain contract balances in connection with the Saddle Brook Mall Project." It was under these circumstances that respondent certified to the Court on November 17, 1977, that the funds belonged to Ken Monk Construction Corp., intentionally omitting any reference to the Safeco claim. It was a material omission. It was misleading and deceitful.

The respondent is hereby suspended from the practice of law for a period of six months. He shall also reimburse the Administrative Office of the Courts for the cost of the transcripts incident to this matter.

*For suspension–*

Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK– 7.

*Opposed–*None.

## ORDER

It is ORDERED that CLIFFORD N. HERBSTMAN of Lincoln Park be suspended from the practice of law for six months and until the further order of this Court, effective December 1, 1980; and it is further

ORDERED that CLIFFORD N. HERBSTMAN be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.