870 A.2d 629 (2005)
376 N.J. Super. 280
DYNASTY BUILDING CORPORATION and B. Gordon LaForge, Plaintiffs-Appellants,
v.
Alan ACKERMAN, Esq., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 2005.
Decided April 4, 2005.
*630 Edward J. Nolan, Hackensack, argued the cause for appellants.
Alan Ackerman, respondent, argued the cause pro se.
Before Judges PETRELLA, LINTNER and PARKER.
The opinion of the court was delivered by
PETRELLA, P.J.A.D.
Plaintiffs Dynasty Building Corporation (Dynasty) and B. Gordon LaForge appeal the vacation of a default judgment they obtained against defendant Alan Ackerman, a New Jersey attorney, and the dismissal of their complaint on the ground that the six-year statute of limitations respecting fiduciary duty conversion had expired by one day. The complaint alleged that Ackerman improperly disbursed *631 funds from his attorney trust account, despite being informed by plaintiffs and First Equity, the financial institution that had the funds wired into Ackerman's trust account, that the monies belonged to Dynasty.
On appeal, plaintiffs argue that their complaint is not barred by the statute of limitations, the entire controversy doctrine or laches. Ackerman argues that he correctly followed the instructions of his clients and that the complaint was properly dismissed.
On December 4 and 6, 1996, funds totaling $187,980.23 were wired into Ackerman's trust account from Equity One, Inc., through PNC bank. Ackerman claims that the monies belonged to his clients, Angel Pena[1] and Galena, Inc., who were in the process of purchasing a flower shop in Ridgewood. On December 19, Dynasty learned that the monies had been wired to Ackerman's account. Dynasty insisted that the monies belonged to it. Its then attorney, Michael J. Mella, since disbarred,[2] as well as Equity One's attorney, Samuel Gerstein, advised Ackerman orally and in writing between December 19 and December 31, 1996, that the monies belonged to Dynasty and demanded a return of the funds.
On December 20, 1996, Ackerman wrote to Mella, explaining that he could find no reference in any document to support Mella's claim that the funds belonged to either his client or Equity One; that as trust funds they belonged to the client and not the attorney, and that he was strictly bound to honor his client's wishes regarding those funds. He further indicated that he had performed all necessary due diligence and was satisfied that his client held title to the monies.
On December 27, 1996, Ackerman received a letter from Gerstein on behalf of Equity One, demanding that the wired funds in question be refunded. Again, Ackerman denied the request and invited Equity One to commence an action to establish that the funds belonged to Dynasty. On December 31, Ackerman wrote to Gerstein that he had reviewed the matter with his client, Pena, and had reviewed the wire instructions received with the monies from Equity One and "the monies were dispersed pursuant to the instructions of my client." Thus, it would appear that Gerstein first had knowledge that the monies had been disbursed by Ackerman to Pena by the December 31, 1996 letter, which was presumably received by Gerstein after that date.
Eventually, plaintiffs filed a complaint against Ackerman on December 20, 2002. The complaint was not answered by Ackerman and default was entered on October 22, 2003. A default judgment was entered against him on November 21, 2003. On December 15, Ackerman filed a motion to vacate the default judgment and dismiss the complaint. This motion was granted by order of February 6, 2004. According to the order signed by the motion judge the vacation of the default judgment was pursuant to R. 4:50-1(d) and (f). The judge indicated that the default judgment *632 was void because plaintiffs failed to give notice to Ackerman of the entry of default and relief from the judgment was also justified because the complaint was barred by the six-year statute of limitations, which had run by one day.

I.
At oral argument we addressed with counsel certain procedural aspects of the matter that could be gleaned from the meager facts in the record. We are satisfied that the procedural deficiencies in and of themselves warrant reversal of this matter. In addition, there was error with respect to the judge's calculation of the time for the running of the statute of limitations, which we will address hereinafter.
The complaint was initially filed on December 20, 2002, and process was served on Ackerman on May 13, 2003. The records of the Clerk of the Court indicate that a default was entered on October 22, 2003. Under these circumstances notice to Ackerman of the application for entry of default was not required because it was made within six months of the date of service. See R. 4:43-1.
As relied on by the trial judge, we note that the rule, as amended in 1996, and the comments thereto, state that a party obtaining a default shall provide a copy of the default after it is entered to the party against whom the default was entered. The giving of this notice, according to the comment, is considered a matter of fairness. However, neither the rules nor any applicable case law impose a penalty for failure to provide such notice. Here, it appears that little if any prejudice resulted to defendant since the default judgment was entered thirty days after entry of the default and Ackerman obviously knew of that because he filed his motion to vacate the judgment and dismiss the complaint twenty-four days later. Hence, the failure to give notice of the entry of default does not mandate severe consequences under the circumstances. Therefore, relief from the default judgment was improperly granted pursuant to R. 4:50-1(d) on the trial judge's finding that the judgment was void. Nonetheless, we are satisfied that failure to provide the notice required by the last sentence in R. 4:43-1 raises an issue that requires examination by the trial court of whether sufficient excusable neglect was established to permit relief from the judgment under R. 4:50-1(a). In order to achieve relief pursuant to subsection (a), we note that the defendant must be prepared to "show that [his] neglect to answer was excusable under the circumstances and that he has a meritorious defense." Marder v. Realty Const. Co., 84 N.J.Super. 313, 318, 202 A.2d 175, 178 (App.Div.), aff'd 43 N.J. 508, 205 A.2d 744 (1964).
Moreover, the trial judge improperly relied on R. 4:50-1(f) as an additional basis to vacate the judgment. The judge found that this section applied because the complaint was time barred by the statute of limitations. However, the running of the statute of limitations is an affirmative defense that must be raised in the defendant's answer. As a result, the judge erred in holding that the statute of limitations defense provided justification for granting relief from the judgment pursuant to R. 4:50-1(f). The judge had insufficient basis to dismiss the complaint under the statute of limitations until Ackerman filed his answer raising it as a separate defense and the issue was developed in the ordinary course.

II.
We also conclude that the motion judge erred in applying the statute of limitations to dismiss the plaintiffs' cause of *633 action. Whether we call it breach of fiduciary duty, legal malpractice or common law conversion the result would be the same. For example, a conversion would not occur until there was an unauthorized act of dominion over the property to the exclusion of the other person's rights. See Mueller v. Technical Devices Corp., 8 N.J. 201, 207, 84 A.2d 620, 623 (1951); McGlynn v. Schultz, 90 N.J.Super. 505, 525-527, 218 A.2d 408, 419-420 (Ch.Div.1966), certif. denied, 50 N.J. 409, 235 A.2d 901 (1967). It has been noted that in the bailment context "[t]he tort arises from the bailee's commission of an unauthorized act of dominion over the bailor's property inconsistent with the [bailor's] rights in that property." Lembaga Enterprises, Inc. v. Cace Trucking & Warehouse, Inc., 320 N.J.Super. 501, 507, 727 A.2d 1026, 1029 (App.Div.), certif. denied, 161 N.J. 334, 736 A.2d 527 (1999).
While the attorney is holding funds in his trust account there is no breach of duty or conversion as to the true owner because the funds are being held in trust for the person rightfully entitled. Here, the potential claimants included Ackerman's client and Dynasty (along with Equity One). Ackerman, as an attorney holding trust funds, was not free to act unilaterally in the face of conflicting claims. In re Herbstman, 84 N.J. 485, 491, 421 A.2d 592, 594-595 (1980). He was not free to decide based on directions from a client, even if the other claimant had not filed an immediate court action. If in fact the plaintiffs can establish that it was their funds, a fiduciary relationship developed between them and Ackerman even though he did not represent them in any matter.
The date that the monies went into the attorney's trust account is not the key date, because nothing untoward happened, i.e., there was no action inconsistent with the competing claims, as long as the funds were being held in trust. A legal malpractice action or a conversion occurs when the attorney breaches a duty that proximately caused the plaintiff's damages. See Grunwald v. Bronkesh, 131 N.J. 483, 492, 621 A.2d 459, 463 (1993). The damage here did not occur until Ackerman started to pay out the funds to Galen, Inc. and/or Angel Pena on or after December 27, 1996. When the funds were transferred, the actionable event occurred. See McGlynn, supra (90 N.J.Super. at 526, 218 A.2d at 419-420). Thus, under this reasoning the six-year statute of limitations would not have run at the time when the complaint was filed.
Ackerman did not advise Dynasty's then counsel, Mella, that the monies were transferred until his letter of December 31. Thus, defendant did not learn that the monies were transferred until after December 31, 1996. Therefore, the complaint filed on December 20, 2002, was not barred by the six-year statute. Summary judgment was clearly inappropriate.
Discovery is needed to explore Ackerman's records and what they showed about ownership of the monies that were wired into his account on each of the two separate transactions of December 4 and 6, 1996, and the basis for each transmittal.[3] There is no proof in the record to establish to whom the money that was in Ackerman's account belonged, particularly where the bank that transferred the funds, Equity One, as well as attorney Mella, claimed that the funds belonged to Dynasty Building Corp. Where there are disputes of fact and trust funds are involved, courts should be reluctant to act precipitously. An attorney, as any fiduciary, *634 owes a high duty in the handling of trust funds. See RPC 1.15; In re Frost, 171 N.J. 308, 322-324, 793 A.2d 699, 707-708 (2002); In re Fleischer, 102 N.J. 440, 447, 451, 508 A.2d 1115, 1120, 1122(1986); In re Stein, 97 N.J. 550, 563, 483 A.2d 109, 115 (1984).
We are thus constrained to reverse and remand for further proceedings on the procedural grounds as well as the error regarding the ruling as to the statute of limitations.
We reject as without merit any claim that the entire controversy doctrine and the prior New York proceedings bar plaintiffs' claim. As noted, Ackerman was not a party to that proceeding. Laches does not apply where there is a statute of limitations that has not run on a fiduciary claim. Whether or not an action that is governed by a statute of limitations is time barred should be determined on the basis of that statute and not on the basis of the equitable doctrine of laches. Kopin v. Orange Products, Inc., 297 N.J.Super. 353, 373, 688 A.2d 130, 140 (App.Div.), certif. denied, 149 N.J. 409, 694 A.2d 194 (1997).
Reversed and remanded for further proceedings consistent herewith.
NOTES
[1] Ackerman informed us at oral argument that although he had not seen or heard from his client for some years and did not know where he was, that he did not believe he was a lawyer, and particularly the lawyer the subject of In re Angel Pena, 164 N.J. 222, 753 A.2d 633 (2000), who died in the terrorist destruction of the World Trade Center on September 11, 2001.
[2] See Matter of Mella 153 N.J. 35, 707 A.2d 144 (1998) (reprimanded for lack of diligence, failure to communicate and to keep clients reasonably informed, and conduct prejudicial to administration of justice), and In re Mella, 162 N.J. 44, 738 A.2d 1290 (1999) (he was temporarily suspended indefinitely). Mr. Mella died on December 28, 1999.
[3] At oral argument Ackerman stated that he still had all of the relevant records. The records of Equity One and PNC Bank also need to be examined.