926 A.2d 395 (2007)
394 N.J. Super. 292
Carole BRUNDAGE, Plaintiff-Respondent,
v.
ESTATE OF Carl CARAMBIO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 31, 2007.
Decided July 3, 2007.
*396 David Jay, Florham Park, argued the cause for appellant (Greenberg Traurig, attorneys; Mr. Jay, of counsel; Helen E. Kleiner, on the brief).
Julian Wilsey, Livingston, argued the cause for respondent (Franzblau Dratch, attorneys; Mr. Wilsey, on the brief).
Before Judges WINKELSTEIN, FUENTES and BAXTER.
The opinion of the court was delivered by
FUENTES, J.A.D.
The practice of law is by definition adversarial, tempered only by a framework of ethical responsibilities. See Nix v. Whiteside, 475 U.S. 157, 166, 106 S.Ct. 988, 994, 89 L.Ed.2d 123, 134 (1986). There is thus an inevitable tension created between aggressive advocacy and a lawyer's ethical responsibilities.
This case requires us to examine a particular manifestation of this tension: a lawyer's duty of candor to an appellate tribunal. Specifically, we must decide whether a lawyer, in the context of opposing a motion for leave to appeal, has a duty to disclose the existence of a pending appeal in which the lawyer is counsel of record, when the pending appeal involves the identical legal issue the appellate tribunal is being asked to consider in the motion for leave to appeal.
After a careful review of the record, and in light of the undisputed facts involved here, we hold that under the provisions of R.P.C. 3.3(a)(5), plaintiff's counsel had an affirmative duty to inform the appellate panel considering the motion for leave to appeal of a pending appeal involving a material issue, that was substantially similar or related to a material issue raised in the motion for leave to appeal in which the attorney was involved. This lawyer violated this duty, because, as attorney of record, he was actually aware of the existence of such an appeal, and failed to inform the appellate panel of its existence.
*397 We consider this question in the following factual context.

I
On October 29, 2004, plaintiff Carole Brundage filed a complaint in the Family Part, Union County, seeking palimony based on an alleged oral promise of support made to her by the now deceased Carl V. Carambio. On March 2, 2005, defendant, the estate of Carl Carambio, filed its answer denying all pertinent allegations and asserting affirmative defenses.[1] In a case management order entered by the Family Part, the parties stipulated that decedent and plaintiff never cohabitated in a marital-type relationship.
It is undisputed that prior to the commencement of this cause of action, plaintiff's counsel was the attorney of record for the plaintiff in the case of Levine v. Konvitz, 383 N.J.Super. 1, 890 A.2d 354 (App. Div.), certif. denied, 186 N.J. 607, 897 A.2d 1061 (2006). The Levine case presented the question of "whether cohabitation is an indispensable element of a cause of action seeking palimony support." Id. at 2, 890 A.2d 354. This legal issue was first addressed by the Family Part in Essex County in the context of a summary judgment motion, and was ultimately decided in favor of the defendant, five months before the Brundage action was filed in Union County. The trial court decision in Levine was issued by the motion judge in an unreported oral decision delivered from the bench.
Plaintiff's counsel subsequently appealed the trial court's decision in Levine. In affirming the trial court, we held that:
In order to establish a prima facie case for palimony, a plaintiff must present competent evidence showing: (1) that the parties cohabitated; (2) in a marriage-type relationship; (3) that, during this period of cohabitation, defendant promised plaintiff that he/she would support him/her for life; and (4) that this promise was made in exchange for valid consideration.
[Id. at 3, 890 A.2d 354.]
The Levine appeal was pending before the Appellate Division when the defendant in Brundage moved for summary judgment before the Family Part in Union County, seeking to dismiss the case on the grounds that plaintiff never cohabited with decedent in a marital-type relationship. In opposing the motion, plaintiff's counsel did not advise the Union County judge of the Essex County trial court's decision in Levine. Indeed, plaintiff's counsel affirmatively stated to the Union County judge that no court had ever found cohabitation to be an indispensable element of a cause of action for palimony.[2]
On July 1, 2005, the Family Part in Union County denied defendant's summary judgment motion, concluding that, although "the absence of cohabitation might be [a] compelling fact," it was not a "legal predicate" to sustain a palimony cause of action. On July 21, 2005, defendant moved for leave to appeal on an interlocutory basis the motion judge's ruling.
In his brief opposing defendant's motion for leave to appeal the trial court's decision in Brundage, plaintiff's counsel did not *398 disclose the pending appeal in Levine to the appellate panel assigned to consider the motion. By order dated August 17, 2005, the appellate panel denied defendant's motion for leave to appeal.
When the matter returned before the Family Part, the parties commenced settlement negotiations. According to defendant, "[f]aced with the prospect of having to go through full-scale discovery and trial before being able to appeal [the trial court's decision] as of right," the Estate decided to settle. In a telephone conversation between counsel, the parties agreed on a settlement, in which defendant agreed to pay plaintiff $175,000, in return for a release of all present and future claims. The agreement required that the payment be made prior to February 1, 2006.
On February 6, 2006, this court's decision in Levine was published. Defendant immediately moved before the Family Part to set aside the agreement, arguing that had it known of the pending Levine appeal, it never would have engaged in settlement negotiations with plaintiff. Defense counsel further contended that plaintiff's counsel's failure to inform him of the pending Levine appeal violated his ethical obligations under the Rules of Professional Conduct. The Family Part denied defendant's motion.

II
We begin our analysis by noting the affirmative obligation imposed upon lawyers in R.P.C. 3.3.(a)(5), (generally denoted as "Candor Toward the Tribunal"):
(a) A lawyer shall not knowingly:
* * * * * *
(5) fail to disclose to the tribunal a material fact knowing that the omission is reasonably certain to mislead the tribunal, except that it shall not be a breach of this rule if the disclosure is protected by a recognized privilege or is otherwise prohibited by law.
[(Emphasis added).]
The sections we have highlighted provide the key elements in the analysis. Although worded in the negative, the rule imposes an affirmative obligation upon the lawyer to disclose to the tribunal a "material fact" that is "reasonably certain" to influence how it decides the matter in controversy. Here, there is no question that the appellate panel who heard and denied defendant's motion for leave to appeal qualifies as a "tribunal."
The next step in the analysis requires us to determine whether the existence of the Levine appeal was a "material fact" that would be "reasonably certain" to significantly influence how the panel decided defendant's motion for leave to appeal.
The concepts of "materiality" and "reasonably certain to mislead" are interrelated. Once a fact is deemed material, its capacity to mislead the tribunal if omitted, although not guaranteed, is practically assured. Stated differently, it is difficult to imagine a scenario in which a tribunal wrestling with the complexities of deciding a legal issue would not be misled by being deprived of a material fact in a case. The facts here illustrate this point.
We first address the question of materiality. From its inception, the central, dispositive issue in this palimony case was "cohabitation." The undisputed absence of cohabitation here was the exclusive legal basis advanced by defendant in support of its motion to dismiss before the Family Part. This was also the only legal issue raised by defendant in its motion for leave to appeal.
Our rules of appellate practice are designed to facilitate the presentation of the legal and factual issues raised by the parties. *399 These rules not only provide for uniformity of format, but also specifically delineate the information the Appellate Division deems "material" to the creation of a fair, balanced, and complete appellate record.
Rule 2:5-1(a) requires the parties in a civil appeal (both appellant and respondent) to file a Case Information Statement (CIS) in the manner prescribed by Rule 2:5-1(f). The specific format of the CIS is incorporated in the rules as Appendix VII. Among the information to be provided in the CIS, a party is required to answer the following questions:
1. IS THERE ANY CASE NOW PENDING OR ABOUT TO BE BROUGHT BEFORE THIS COURT WHICH:
(A) Arises from substantially the same case or controversy as this appeal? Yes _____ No _____
(B) Involves an issue that is substantially the same, similar or related to an issue in this appeal? Yes _____ No _____
2. WAS THERE ANY PRIOR APPEAL INVOLVING THIS CASE OR CONTROVERSY? Yes _____ No _____
IF THE ANSWER TO EITHER 1 OR 2 ABOVE IS YES, STATE:
Case Name:
Appellate Division Docket Number:
The need for such information is self-evident. Although, administratively, we function through eight individual parts, comprised of four to five judges each,[3] and cases are decided by panels made up of two to three judges, the Appellate Division is a single, unitary court, and legal opinions issued by any panel are an expression of law by the court as a whole.[4] We thus strive to schedule appeals in a coordinated fashion, to maximize the likelihood of consistent results.
Efficient utilization of judicial resources is also a well-accepted public policy. See Woodward-Clyde Consultants v. Chem. & Pollution Scis., Inc., 105 N.J. 464, 472, 523 A.2d 131 (1987) (finding the efficient administration of judicial resources as one of two public policy rationales sustaining the entire controversy doctrine); Exxon Research Eng'g Co. v. Indus. Risk Insurers, 341 N.J.Super. 489, 506-07, 775 A.2d 601 (App.Div.2001) (considering the efficient administration of judicial resources as one of the factors to be considered by a federal court in deciding whether to abstain from exercising jurisdiction in a state case).
Here, the issue of "cohabitation" was the central, dispositive issue in both Levine and Brundage. The appellate panel assigned to hear the motion for leave to appeal in Brundage would have certainly considered the impact denying the motion would have had on the efficient use of judicial resources in Union County, in light of the pendency of the Levine appeal.
Public policy would have militated in favor of granting leave to appeal in Brundage, because: (1) if the decision of the Essex County judge in Levine was affirmed, allowing the Brundage case to proceed in Union County would likely prove to be an exercise in futility; (2) if the decision in Levine was reversed, there would be a strong likelihood that the Brundage case would settle. Although, in either scenario, *400 the prospect of an appeal to the Supreme Court would always loom, the probability that certification would have been granted is remote.[5]
We thus hold that plaintiff's counsel had an ethical duty, pursuant to R.P.C. 3.3(a)(5), and under the requirements of the CIS, to disclose to the appellate panel hearing defendant's motion for leave to appeal that the issue of "cohabitation" was scheduled for appellate review in the pending Levine appeal. The existence of the pending Levine appeal was a material issue of fact in the Brundage motion for leave to appeal. Under these circumstances, plaintiff's counsel knew or should have known that the decision to withhold this information from the Brundage appellate panel was reasonably certain to mislead that tribunal in its consideration of defendant's motion for leave to appeal.
We emphasize that, as an intermediate appellate court, it is not our function to hear and decide attorney disciplinary cases. That function, and the concomitant authority to perform it, is exclusively reserved for our State Supreme Court. N.J. Const. art. VI, § 2, ¶ 3; In re Greenberg, 155 N.J. 138, 152, 714 A.2d 243 (1998), cert. denied, 526 U.S. 1132, 119 S.Ct. 1807, 143 L.Ed.2d 1011 (1999). Our task here is to determine how the conduct of a litigant's lawyer, as measured by his or her ethical obligations under the Rules of Professional Conduct, affects the enforceability of a settlement agreement in the underlying litigation. Thus, in evaluating the evidence offered to support a claim of unethical conduct, we utilize the traditional civil "preponderance of the evidence" standard, not the "clear and convincing" standard applicable to attorney disciplinary cases. R.M. v. Supreme Court, 185 N.J. 208, 214, 883 A.2d 369 (2005); see R. 1:20-4(a).

III
Having decided that plaintiff's counsel violated his duty to the court, we must next determine whether this violation also constitutes grounds for vitiating the settlement agreement reached by the parties. Our analysis of this issue is informed by Supreme Court decisions that have considered the interplay between a violation of R.P.C. 3.3(a)(5), and actions taken by both the tribunal and the adverse party as a consequence of the omission.
In re Seelig, 180 N.J. 234, 850 A.2d 477 (2004), illustrates the point. A motorist retained attorney Seelig to represent him in connection with aggravated manslaughter and death by auto charges filed by the county prosecutor. Id. at 238, 850 A.2d 477. Sometime thereafter, the local police department also issued Seelig's client a number of related Title 39 summonses, including reckless driving and leaving the scene of an accident. Ibid. Seelig arranged to have his client plead guilty to the Title 39 offenses in municipal court, with the expectation that the constitutional protection against double jeopardy would preclude the State from prosecuting his client on the related criminal offenses. Id. at 239, 850 A.2d 477; see State v. Dively, 92 N.J. 573, 586, 458 A.2d 502 (1983).
In furtherance of this strategy, Seelig knowingly failed to disclose the existence of these parallel charges to both the prosecutor and the municipal court judge who accepted the plea. As plaintiff's counsel asserts here, Seelig argued that he had "absolutely no obligation" to do so. Seelig, supra, 180 N.J. at 241, 850 A.2d 477.
*401 In addressing the central question at issue in Seelig, the Court looked to the evolution of a lawyer's duty of candor to a tribunal. In In re Nigohosian, 88 N.J. 308, 314-15, 442 A.2d 1007 (1982), a case decided prior to the adoption of our modern rules of professional conduct, the Supreme Court found an ethical infraction when a lawyer neglected to inform the court that his client transferred an asset subject to a settlement agreement, thereby negatively affecting the court's management of the case. In In re Herbstman, 84 N.J. 485, 491, 421 A.2d 592 (1980), the Court disciplined an attorney for failing to inform the court about competing claims on funds under the attorney's control. Finally, in In re Turner, 83 N.J. 536, 539, 416 A.2d 894 (1980), the court found a lawyer guilty of committing an ethical infraction, based on the lawyer's failure to advise the court about his client's receipt of monies in the course of a receivership action.
As noted by the Court in Seelig, these three cases:
enunciate the principle that "an attorney is under a duty, when the proper administration of justice so requires, to disclose all pertinent and relevant facts to the court so that it may act fairly." Further, as pointed out by the Comments to RPC 3.3(a)(5), those cases extend this duty to both "facts that are at issue in the case [and] facts relating to the management of the case." RPC 3.3, cmt. Rule of Professional Conduct 3.3(a)(5), then, reflects the codification of legal precedent imposing a heightened duty of candor towards the tribunal not explicitly included in the ABA Model Rules.

[Seelig, supra, 180 N.J. at 248, 850 A.2d 477 (internal citation omitted).]
Thus, after an extensive analysis of the interplay between the Sixth Amendment right to counsel and an attorney's ethical responsibilities, the Seelig Court rejected respondent's argument.
We conclude, therefore, that an attorney in the circumstances here presented is not prohibited by a client's Sixth Amendment rights, or any other duty owed the client, from informing the municipal court about pending indictable offenses and should do so to prevent the court from being misled by the attorney's silence.
[Id. at 256, 850 A.2d 477.]
The majority of the Court declined to impose a disciplinary sanction, finding that Seelig had acted in good faith.[6] The court noted, however, that the prosecutor successfully rebuffed the defendant's double jeopardy argument. The trial court vacated the guilty pleas to the Title 39 offenses based on "substantial defects in the proceeding that resulted in a manifest injustice." Id. at 241, 850 A.2d 477.
With these principles as our guide, we now turn to the central issue in this case; that is, what impact plaintiff's counsel's conduct has on the enforceability of this settlement agreement. It is reasonable to conclude that, but for the failure to disclose the pending Levine appeal, there was a strong likelihood that this settlement would not have occurred, or, at least, not in its present form.
As a starting point, plaintiff's counsel's conduct had a direct impact on the way defense counsel conducted himself. To state the obvious, had plaintiff's counsel advised the appellate panel of the existence *402 of the Levine appeal, it is entirely reasonable that defense counsel may have, at least: (1) advised his client to await the outcome of the Levine appeal before agreeing to any settlement; or (2) depending on his professional assessment of the likelihood of Levine being affirmed, used the pending appeal to obtain some degree of negotiating leverage, thereby securing a more favorable settlement for his client.
In either scenario, it cannot be seriously questioned that the defense strategy in Brundage was significantly affected by plaintiff's counsel's actions. As in Seelig, fairness and sound public policy dictate that plaintiff be denied the fruits of her counsel's conduct. Vitiating a settlement tainted by such sharp practices is the only way to restore the essential elements of good faith and fair dealing, which are implicit parts of all contracts in this State. Wade v. Kessler Inst., 343 N.J.Super. 338, 345, 778 A.2d 580 (App.Div.2001), aff'd, 172 N.J. 327, 798 A.2d 1251 (2002).
Reversed.
NOTES
[1] Most notably, defendant's tenth affirmative defense specifically stated: "Plaintiff and decedent did not have a marital-type relationship because they were not cohabitants and they failed to hold themselves out to others as husband and wife."
[2] Plaintiff's counsel was not ethically obligated to disclose the existence of the Essex County decision in Levine to the Union County Judge, because unpublished opinions do not have precedential value. R. 1:36-3.
[3] See General Assignment Order dated June 13, 2007, http://www.judiciary.state.nj.us/ pressler/2007-2008 General Assignment Order.pdf
[4] The fact that a panel is not bound by the opinion of another panel is not antithetical to the principle of a unitary court. Inconsistencies among panels are resolved by the Supreme Court through its appellate review. R. 2:12-4.
[5] According to figures compiled by the Office of the Clerk of the Supreme Court, in court-year 2004-2005, out of 1,383 petitions for certification filed, only 137 were granted. In court-year 2005-2006, out of 1,325 petitions for certification filed, only 204 were granted.
[6] Justice LaVecchia dissented, concluding that Seelig "intended to capitalize on the fruits of his conduct through a later claim of Double Jeopardy, a claim made available as a consequence of his omission of critical information in his exchange with the court." Id. at 258, 850 A.2d 477 (LaVecchia, J., dissenting).