**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3395-20

GREENSTAR, LLC,
HOMETOWN COFFEE,
LLC, RAM DONUT CORP.,
DOLOMA, INC., MANI
DIVISION, RAM, INC.,
WILLIAMSTOWN DONUT,
LLC, WINSLOW DONUTS,
LLC, and DASHARATH PATEL,

      Plaintiffs-Appellants,

v.

ALBERT K. MARMERO,
ESQUIRE and LONG,
MARMERO & ASSOCIATES,
LLP,

      Defendants-Respondents.

_____

Submitted September 14, 2022 – Decided October 5, 2022

Before Judges Vernoia and Natali.

On appeal from the Superior Court of New Jersey, Law
Division, Gloucester County, Docket No. L-1384-18.

John C. Penberthy, III, attorney for appellants.

Marmero Law, LLC, attorneys for respondents (Albert K. Marmero, on the brief).

PER CURIAM

In this appeal, plaintiffs challenge a Law Division order granting summary judgment to defendants that dismissed their breach of contract, conversion, breach of fiduciary duty, and unjust enrichment claims as barred by the statute of limitations, and a separate order denying their motion for reconsideration. Before us, plaintiffs contend the court improperly granted summary judgment as a material factual issue existed regarding the commencement of the limitations period. Second, plaintiffs claim the court erred in denying their reconsideration application primarily by misapplying applicable case law and failing to consider relevant evidence. We disagree with all these arguments and affirm.

I.

Viewed in the light most favorable to plaintiffs, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995), the pertinent facts are as follows. Plaintiffs entered into an Asset Purchase Agreement on January 20, 2009, in which they agreed to sell their nine Dunkin' Donuts franchises for a total amount of $5,375,000. Prior to the August 17, 2009 closing, the buyers provided

plaintiffs with $850,000, and later tendered an additional $762,500. The balance of $3,762,500 was satisfied by a note held by plaintiffs, as reflected in the settlement statement prepared the same day of the closing.

The settlement statement also identified a $65,800 line item entitled "Radiant Escrow." In their complaint, plaintiffs alleged defendants "received [those] funds . . . in trust . . . which were later to be distributed to [plaintiffs] . . . because [plaintiffs] were required to purchase a radiant point of sale system for [b]uyers." They further averred that the escrowed funds "would come back to [plaintiffs] once the closing transpired and [b]uyers . . . purchased the system with their own funds." Defendants' alleged failure to distribute the $65,800 is the subject of the complaint and this appeal.

Over two years after the closing, on October 12, 2011, plaintiffs' former counsel, Anthony Tabasso, Esquire, wrote to defendant Albert Marmero, Esquire, then-counsel for the buyers. In that letter, Tabasso referenced two prior communications between him and Marmero regarding the escrowed funds.[1] Specifically, Tabasso confirmed that Marmero previously informed him that he distributed those funds at closing. Tabasso also claimed that Marmero's prior

---

[1] More specifically, Tabasso's October 12, 2011 letter referred to an initial correspondence by him to Marmero and a response by Marmero on May 11, 2011. Neither of these communications is contained in the record.

representation was inaccurate, as the settlement statement evidenced that defendant did not distribute the escrowed funds on August 17, 2009. As he explained:

> With the exception of the $594.40 fee paid to your firm, each of the remaining disbursements mentioned above is listed as a separate item on the settlement sheet, payable from seller's funds (see lines 810, 1303, 1304, and 1305). However, each of these charges is listed in addition to the $65,800.00 charge listed at line 1113, "Radiant Escrow." The Radiant Escrow was to be held against the potential contingency where Dunkin' could have required the buyer to replace the radiant heat system in one of the transferred locations. The Radiant Escrow is entirely separate and distinct from the charges you list, and all of the foregoing charges were combined in line 1400 to arrive at the seller's total settlement charges. Even if the Radiant Escrow funds were disbursed as you state, this would leave an excess of $65,800.00 on the settlement sheet. While it appears correct that my clients brought check no. 1090 in the amount of $74,120.63 with them to closing, this does not address the separate amount of the Radiant Escrow, which was deducted from the proceeds of the sale. Had that amount not been deducted, my clients would only have needed a check for $8,320.63 to complete closing.[2]

_____

[2] Tabasso's characterization of the escrowed funds as a "contingency" is slightly inconsistent with plaintiffs' description of those funds in their complaint as a "deposit." That discrepancy has no effect on our analysis as Tabasso's characterization of the funds as a contingency would not toll or otherwise extend the accrual date beyond October 12, 2011, at the latest.

A-3395-20

The letter concluded, "[t]o summarize, line 1113 represented an escrow. As such, your firm is required to hold it until the buyer[s] authorized release. It is imperative that this sum be accounted for immediately. . . . In the meantime, my clients reserve all of their rights and remedies."

On December 3, 2018, over nine years after the transaction closed and over seven years after Tabasso's October 12, 2011 letter, plaintiffs filed a complaint, which, as noted, alleged that defendants breached the Asset Purchase Agreement by failing to distribute the radiant escrow funds contrary to their role as designated closing agents for the sale, converted the escrowed funds to their benefit, breached their fiduciary duty owed to plaintiffs by using the escrowed funds to their own end, and unjustly enriched themselves by retaining the escrowed funds.

After the close of discovery, defendants moved for summary judgment and argued that all of plaintiffs' claims were barred by the applicable six-year statute of limitations provided for in N.J.S.A. 2A:14-1. They specifically contended that "[a]ny and all disputes concerning the agreement to sell [p]laintiff's businesses involving [d]efendants accrued on August 17, 2009." Additionally, they maintained that based on Tabasso's October 12, 2011 letter, "the latest the [p]laintiff[s] could have been aware of any such claim [was] on

5

October 12, 2011." Plaintiffs failed to file timely opposition to defendants' motion.

The court granted defendants' application and stated its reasons on the record in an oral opinion. The court first noted that plaintiffs failed to oppose defendants' motion. Notwithstanding that procedural infirmity, the court considered the matter on the merits and concluded that plaintiffs' claims were time barred.

As to the accrual date, the court found that any cause of action related to the escrowed funds accrued "when settlement was made on August 17, 2009." In the alternative, the court relied on Tabasso's October 12, 2011 letter and explained "the last possible accrual date that plaintiffs could allege was October 12, 2011" and, thus, even affording plaintiffs that later accrual date, the action was barred by the six-year limitations period.

Three days after the court dismissed their claims, plaintiffs filed opposition to defendants' summary judgment motion and also moved for reconsideration one day later. In their Rule 4:46-2(b) counterstatement of material facts, plaintiffs admitted that the closing occurred on August 17, 2009, qualified, however, by a statement, without record or documentary support, that "the transaction was not completed until December 12, 2013." According to

6

plaintiffs, it was on this later date that an unidentified "agreement [to] pay off the [n]ote(s) to plaintiffs was signed." Notably, the record does not include a copy of the note or further details of the referenced agreement.

Plaintiffs also asserted it was at this time that "[p]laintiffs realized that the deposit had not been accounted for nor returned per the August 17, 2009 settlement statement" and they did not receive an accounting from defendants until February 2014. The 2014 accounting referenced is based on a series of emails between Marmero and plaintiffs' former counsel, Brian Fleischer, Esquire.

Plaintiffs maintained that "Marmero[] admit[ted] in his email to Brian Fleischer dated February 11, 2014 . . . that there were additional legal 'expenses' not on the HUD-1 settlement statement which Marmero prepared and for which he applied to the radiant escrow deposit." Plaintiffs thus argued that "[t]he statute of limitations would have been tolled until [p]laintiffs became aware of the discrepancy" in February 2014.

In counsel's certification in support of plaintiffs' reconsideration motion, he explained why plaintiffs failed to provide timely opposition to defendants' motion. Counsel certified that as he was preparing opposition to defendants' application, he "had to verify [documents] from third parties," which "took more

time than [he] had," and "[he] should have requested an extension to answer the motion but did not." He added that "[p]laintiffs . . . should not be penalized because [he] misread the docket regarding the hearing date." As to the merits, plaintiffs' counsel again asserted that plaintiffs "did not find out about what happened to the [escrowed] funds until February of 2014." Based on this assertion, he claimed "[t]here are obviously material issues of fact that can only be discerned from a trial."

Further, in his accompanying letter brief, plaintiffs' counsel asserted that the 2014 emails between Marmero and Fleischer constituted new evidence as they "came to [his] attention only a few weeks ago and [he] had to verify this with other counsel previously involved." Defendants filed an opposition to plaintiffs' motion for reconsideration and a cross-motion for sanctions and attorneys' fees pursuant to Rule 1:4-8.

After hearing oral argument, the court denied the parties' motions, provided its reasoning on the record in an oral opinion the same day, and entered a conforming order. The court rejected plaintiffs' argument that counsel's failure to oppose the summary judgment motion provided a basis for reconsideration and characterized the argument as "quite disingenuous," explaining it could "think of no rational reason why an attorney would think" that the motion would

8

be heard at the time of trial. The court also noted that plaintiffs' counsel had not communicated with the court regarding the scheduling of the hearing or requested an extension.

The court also rejected plaintiffs' argument that the 2014 emails constituted newly discovered evidence. The court noted that the emails had "been known to [plaintiffs] . . . or [their] legal representatives . . . for seven years" and plaintiffs failed to request discovery from defendants. Relying on Del Vecchio v. Hemberger, 388 N.J. Super. 179, 189 (App. Div. 2006), and Hinton v. Meyers, 416 N.J. Super. 141, 150 (App. Div. 2010), the court explained that plaintiffs' application improperly relied on "unraised facts that were known to the movant prior to entry of judgment." Finally, the court expressed "great doubt" as to whether the emails in question would have changed his determination regarding the statute of limitations defense.

As noted, the court also denied defendants' cross-motion for sanctions and attorneys' fees and explained that plaintiffs "had at least a good faith basis to file the litigation." This appeal followed.

II.

Before us, plaintiffs argue the motion record revealed a material issue of fact regarding the accrual date of the six-year statute of limitations and as such

the court erred by granting defendants' application. Specifically, they claim Tabasso's 2011 correspondence did not put them on notice that defendants used the escrowed funds to pay their legal fees, and they did not become aware of defendants' misappropriation until February, 2014. Plaintiffs acknowledge their failure to raise the issue in opposition to defendants' summary judgment motion but assert that the court should have "prob[ed] into the dispute" once it "was brought to the court's attention in the reconsideration [motion]." Plaintiffs' arguments are without merit.

We "review[] de novo the . . . entry of summary judgment," Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014), applying "the same standard as the trial court," Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment is appropriate if the record demonstrates there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017). When determining whether there is a genuine issue of material fact, we must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540.

10

Rule 4:46-2(a) requires that a motion for summary judgment be supported by a statement of material facts which "cit[es] to the portion of the motion record establishing [each] fact or demonstrating that [each fact] is uncontroverted." R. 4:46-2(a). "[A] party opposing a motion for summary judgment [must] 'file a responding statement either admitting or disputing each of the facts in the movant's statement.'" Claypotch v. Heller, Inc., 360 N.J. Super. 472, 488 (App. Div. 2003) (quoting R. 4:46-2(b)).

Breach of contract, conversion, breach of fiduciary duty, and unjust enrichment claims are all governed by a six-year statute of limitations. N.J.S.A. 2A:14-1; O'Keefe v. Snyder, 83 N.J. 478, 489 (1980) ("The fulcrum on which the outcome turns is the statute of limitations in N.J.S.A. 2A:14-1, which provides that an action for replevin of goods or chattels must be commenced within six years after the accrual of the cause of action."); Dynasty Bldg. Corp. v. Ackerman, 376 N.J. Super. 280, 286-87 (App. Div. 2005) (applying a six-year statute of limitations to claims of conversion and breach of fiduciary duty); Kopin v. Orange Prods., Inc., 297 N.J. Super. 353, 373-74 (App. Div. 1997) (finding N.J.S.A. 2A:14-1's six-year limitations period applicable to quasi-contract claims, including unjust enrichment); Est. of Ahrens v. Edgewater Colony, Inc., 267 N.J. Super. 83, 88 (App. Div. 1993) (noting that claims

11

alleging conversion of stock shares are generally covered by the six-year statute of limitations of N.J.S.A. 2A:14-1); <u>Iwanowa v. Ford Motor Co.</u>, 67 F. Supp. 2d 424, 473 (D.N.J. 1999) ("The statute of limitations in New Jersey for claims sounding in restitution/unjust enrichment or quantum meruit is six years.").

The statute of limitations for any claim does not begin to run until the claim has accrued. "[F]or purposes of determining when a cause of action accrues, . . . the relevant question is when did the party seeking to bring the action have an enforceable right." <u>Metromedia Co. v. Hartz Mountain Assocs.</u>, 139 N.J. 532, 535 (1995) (quoting <u>Andreaggi v. Relis</u>, 171 N.J. Super. 203, 235-36 (Ch. Div. 1979)). In most contract actions it is "presume[d] that the parties to a contract know the terms of their agreement and a breach is generally obvious and detectable with any reasonable diligence." <u>Cnty. of Morris v. Fauver</u>, 153 N.J. 80, 110 (1998).

Here, the record fully supported the court's order granting defendants summary judgment. It was undisputed that the sale of the nine Dunkin' Donuts franchises closed on August 17, 2009. At that time, or shortly thereafter, plaintiffs knew, or with any semblance of diligence should have known, that the escrowed funds belonged to them and had not been distributed from Marmero's trust account. Further, there was no competent evidence presented to the motion

A-3395-20

court, or us, that would create a material and genuine factual question that defendants' obligation to distribute the escrowed funds was excused by any provision of the Asset Purchase Agreement, or any statement or action of the buyers or defendants, thereby rendering their 2018 claims timely filed.

Even if plaintiffs' claims did not accrue on or about the closing date, plaintiffs were clearly aware of actionable claims related to the purported improper retention of the escrowed funds on October 12, 2011, when Tabasso wrote to Marmero, over seven years before they filed their complaint. In that letter, plaintiffs' counsel took the position that the $65,800 should have been held in escrow, confirmed that Marmero told him, incorrectly, that he had distributed the funds, explained how the settlement statement verified that the $65,800 had not been distributed to plaintiffs, demanded an accounting, and reserved all of plaintiffs' rights and remedies.

Finally, we reject plaintiffs' argument that the 2014 emails between Marmero and Fleischer created a material and genuine dispute of fact. Initially, we note that the 2014 emails were improperly introduced for the first time in plaintiffs' motion for reconsideration. Even if the 2014 emails were properly presented to the court in opposition to defendants' summary judgment motion, we find no support for plaintiffs' contention that these emails constituted their

13

first notice that they had potential claims against defendants related to the escrowed funds. Viewed in the light most favorable to plaintiffs, the 2014 emails include Marmero's explanation as to how he accounted for and distributed the escrowed funds. If we were to accept plaintiffs' claim that Marmero improperly used the funds, by that point, plaintiffs had known since 2011, at the latest, that they had a right to the escrowed funds and that Marmero failed to distribute the $65,800 to them.

III.

Finally, we address defendant's motion for reconsideration under Rule 4:49-2. A motion for "[r]econsideration is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (first alteration in original) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). In determining whether such an abuse has taken place, a reviewing court should be mindful that reconsideration is not to be utilized by a party just because of their "dissatisfaction with a decision of the [c]ourt." Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (alteration in original) (quoting D'Atria, 242 N.J. Super. at 401).

14

Reconsideration is appropriate when (1) "the [c]ourt has expressed its decision based on a palpably wrong or irrational basis," or (2) "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. (alterations in original) (quoting D'Atria, 242 N.J. Super. at 401). "[T]he magnitude of the error cited must be a game-changer for reconsideration to be appropriate." Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010). "[I]f a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the first application, the [c]ourt should, in the interest of justice (and in the exercise of sound discretion), consider the evidence." D'Atria, 242 N.J. Super. at 401-02. Nonetheless, because "motion practice must come to an end," the court must both be "sensitive and scrupulous in its analysis of the issues [on] reconsideration." Ibid.

Here, plaintiffs argue that the court erred in denying their motion for reconsideration because the court: (1) erred by failing to consider the 2014 emails submitted by plaintiffs in their May 17, 2021 untimely opposition; (2) improperly relied on Del Vecchio and Hinton; (3) incorrectly ruled on defendants' statute of limitations defense without requiring defendants to submit "all of the evidence [they] controlled"; and (4) failed to provide latitude to

15

plaintiffs with respect to their belated filing in light of the COVID-19 pandemic. We reject all of these arguments as we are satisfied that the court did not abuse its considerable discretion in denying plaintiffs' application.

As already explained, the 2014 emails are immaterial as to whether plaintiffs had knowledge of their potential claims on or before October 12, 2011. Further, when reviewing those exhibits, again provided for the first time on reconsideration, the court expressed its "great doubts" that they would have altered the court's initial decision. We find no error with that discretionary decision and reject plaintiffs' claims that the court failed to consider probative, competent evidence.

We are also satisfied that the court had a rational basis to determine that the 2014 emails did not constitute newly discovered evidence, and accurately applied Del Vecchio and Hinton, which relied on the principle that facts that were known yet unraised prior to the entry of a challenged order are insufficient to support a grant of reconsideration. See also Palombi, 414 N.J. Super. at 289 (concluding that facts known to the movant prior to the entry of the order were not an appropriate basis for reconsideration). Finally, we find nothing in the record to support plaintiffs' contention, raised for the first time before us, that

16

the COVID-19 pandemic in any way impacted their ability to discover relevant evidence or adhere to the court's procedural rules.

To the extent we have not addressed any of plaintiffs' remaining arguments it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3395-20