**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4801-18

LANCE H. STARK,

     Plaintiff-Appellant,

v.

JAMES MARAVENTANO, SR.,
and YEAMON MUSIC, INC.,

     Defendants-Respondents.

_____

Submitted January 4, 2021 – Decided October 21, 2021

Before Judges Hoffman and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0028-18.

Lora B. Glick, attorney for appellant.

Simon Gluck and Kane, LLP, attorneys for respondents (Mariana del Rio Kostenwein, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Plaintiff Lance H. Stark appeals the May 23, 2019 orders that granted defendants James Maraventano, Sr. and Yeamon Music, Inc.'s summary judgment motion, dismissed plaintiff's complaint, and denied plaintiff's cross-motion to extend discovery.[1] The court found plaintiff's claims were time-barred under applicable statute of limitations and by equitable defenses. We affirm the trial court's orders.

I.

A.

Plaintiff is a professional drummer. He alleges that in 2002 after playing a "gig" in James Maraventano, Sr.'s (defendant's) band known as "Second Wind," defendant asked plaintiff and another musician, Hal Seltzer[2] (Seltzer), a bass player, to join Second Wind as "permanent and equal members, promising them equal pay after expenses." Plaintiff alleges defendant "made repeated verbal commitments and agreements" with him that he would equally share profits from the band. This meant plaintiff would be "paid [twenty-five percent] of all the proceeds from the business after normal and customary

---

[1] The trial court denied as moot defendants' motion for an order quashing plaintiff's March 13, 2019 document request and protective order to bar further discovery. Defendants did not file a cross-appeal of that order.

[2] Seltzer is not a party to this litigation.

A-4801-18

business expenses." Plaintiff alleges he and Seltzer requested two conditions: change the band's name to Jimmy and the Parrots[3] (the Band) and allow them to turn down appearances to permit them to play with more well-known bands or musicians.

Once they joined the Band, plaintiff alleges he and Seltzer increased the "quality, visibility and monetary success" of the Band – without additional compensation – because they thought they were equal members of the Band. He contends the Band secured higher paying engagements using national booking agents. Ibid. Plaintiff alleges he produced defendant's "melodies" into original songs and the Band's CD's using his own resources. In 2007, the Band secured a record deal with Madacy Entertainment/Laughing Baby, LLC, that they all signed. Seltzer also formed a publishing company for the Band called "JiJiHaLa" representing the first names of all four of them.

Plaintiff and Seltzer were advised about engagements to play with the Band via an email from Marybeth Rotella, the Band's manager, who advised about job locations and pay. Plaintiff could accept or decline on a

---

[3] "Jimmy and the Parrots" was another name defendant used for the Band since 2001. The Band is a Jimmy Buffett tribute band.

A-4801-18

performance-by-performance basis. From time to time, he declined to play with the Band because of other engagements.

By 2008, plaintiff claims that defendant no longer was transparent about what the Band was paid for its performances. In a February 1, 2008 email to defendant, Selzer acknowledged that he and plaintiff were "hired guys" who "can accept or not accepts gigs as they are offered." Seltzer acknowledged in his deposition "that [defendant] was not doing what was originally represented, and . . . we were not getting things split equally." He testified he discussed with plaintiff that "we stopped being 'partners' a long time ago, and I'm fine with the situation as it is."

Plaintiff did not recall the February 2008 email when he was deposed. However, when he was asked whether he felt he was being cheated in 2008, plaintiff answered "I felt often times I was cheated, even though I was quiet. But it is like a marriage, you don't bring up everything. You feel you are being cheated on, but it is the long run you are in for."

Counsel for defendants asked:

> Q. You played a significant number of gigs with the band every year . . . in 2007, 2008, 2009, you are saying even though you may have felt cheated, you never said anything?

4

A. At times, I did say stuff, absolutely, but when, I don't recall.

Q. And what happened when you complained?

A. I don't know the specifics, unless you ask me to go gather this information, I can put it together maybe from my old emails. At the moment, there were a number of occasions where it would be brought up and you would get brushed aside with a certain answer, everything was pseudo-secret."

In another portion of his deposition, plaintiff testified he thought he was being short-changed by defendant.

Q. And when did you first start feeling that you were being short-changed?

A. I can't recall the specific date. It was an incremental matter of little things, a little bigger, a chance for equal pay. . . . I started finding little things, blatant lies to my face, so it started there."

However, plaintiff could not recall when this started, when he asked for an accounting or whether he asked to have profits divided up, although he claimed he made that suggestion. He acknowledged he received a 1099 form for his taxes.

Plaintiff alleges Seltzer left in 2015, negotiating a "buy-out" agreement with the Band. On December 29, 2016, defendant sent plaintiff an email informing plaintiff that he no longer wanted him to play with the Band.

5

Plaintiff asked for an accounting of the band's revenue and for a "buyout . . . based on a percentage of the gross for a year" but he did not receive a buy-out. Plaintiff was "certain" defendant was violating the agreement by 2017.

B.

On January 25, 2018, plaintiff filed a ten-count civil complaint in the Law Division against defendant and a corporation named Yeamon Music, Inc. (Yeamon).[4] The claims included breach of contract, legal fraud, fraud in the inducement, equitable fraud, fraudulent concealment, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, and misappropriation of intellectual property. Plaintiff requested an accounting of the revenue received by the Band from 2002 through present, an order to produce corporate books and records, a preliminary and permanent injunction prohibiting defendant from using the Band's name, compensatory damages, and attorney's fees.

Defendants filed a motion to dismiss for failure to state a claim. This was denied without prejudice on March 29, 2018, but defendants successfully opposed plaintiff's request for injunctive relief. Defendants filed an answer on

---

[4] Yeamon is a corporation that was formed in 2007 by defendant. Defendant, defendant's wife, and defendant's son are the sole shareholders. Although named as a defendant, none of the allegations pleaded by plaintiff relate directly to this corporation.

A-4801-18

April 30, 2018. The parties conducted discovery, which included depositions of plaintiff, defendant and Seltzer. Plaintiff served defendants with a notice to produce documents including a request for accounting records from 2002.

In April 2019, defendants filed a motion for summary judgment to dismiss the complaint. This was supported by a statement of material facts, which was certified by defendants' attorney. It referenced various exhibits that were attached to a memorandum of law, including portions of deposition transcripts and exhibits marked during the depositions. Defendants also filed a motion to quash the document request served by plaintiff and for a protective order that further discovery not be conducted.

Plaintiff filed a counterstatement of material facts, opposing defendants' summary judgment motion and a cross-motion to extend discovery, supported by a certification from plaintiff's counsel and attaching various communications between the parties.

The trial court conducted oral argument. Plaintiff filed a letter responding to questions by the court raised during oral argument and attaching five additional exhibits dated from 2002 to 2010.

On May 23, 2019, the trial court delivered its opinion on the record, granting defendants' motion for summary judgment, denying as moot

7

defendants' motion to quash discovery, and denying plaintiff's cross-motion to extend discovery.

C.

In its oral opinion, the trial court granted defendants' motion for summary judgment finding uncontroverted the facts relating to his claims. The six-year statute of limitations applied to Counts One through Ten because the court found plaintiff was making claims about compensation going back to 2001 or 2002. The court found "the claims were mature no later than 2008, all of them, virtually all of them."

Starting with breach of contract, the court found the six-year statute of limitations barred the claim. "[P]laintiff was aware of his potential claims against . . . defendants dating back to the mid-2000's, certainly no later than 2008," based on emails and communications, and specifically an email from February 1, 2008. Many of the communications plaintiff had with defendant raised issues "about whether or not [plaintiff] was being fairly and adequately compensated." Because plaintiff was aware of his claim by 2008 but did not file a complaint until 2018, the statute of limitations ran out in 2014, barring any claims before then.

A-4801-18

The court found the discovery rule did not apply. The court also found no evidence of an agreement to share profits. There was no evidence of co-ownership. The facts all showed that plaintiff "was nothing more than an independent contractor."

The court found all the fraud-based causes of action were barred by the six-year statute of limitations because, based on documentary evidence, plaintiff "was aware of the basis for a fraud claim no later than 2008." Plaintiff expressed concern about whether he was being treated fairly in 2008. The court found this was the "trigger date" for the fraud claims.

Count Ten raised a claim about misappropriation of intellectual property. The court observed this "should have been brought years and years ago, . . . certainly no later than 2008." The court found plaintiff admitted to many of the facts in this claim, including that he was a "hired player." The court concluded "the claim is stale."

The court found the equitable defenses of waiver, equitable estoppel and laches applied to bar any equity-based claims because plaintiff "waited far too long to bring these claims." The trial court found that defendants would be prejudiced if it allowed the equity-based claims to continue.

A-4801-18

The court did not believe plaintiff could prove compensatory damages. It held that defendants' motion to quash was moot because of the summary judgment order. Plaintiff's cross-motion for an extension of the discovery end date was denied.

On appeal, plaintiff raises the following issues:

POINT I

THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AS SAME WAS NOT PROPERLY SUPPORTED BY AFFIDAVITS OR CERTIFICATIONS OF ANY PARTY OR WITNESS HAVING PERSONAL KNOWLEDGE OF THE UNDERLYING FACTS, BUT INSTEAD CONTAINED ONLY IMPROPERLY SUBMITTED AND UNAUTHENTICATED DOCUMENTS APPENDED TO THEIR LEGAL BRIEF.

POINT II

IN IMPROPERLY ADDRESSING THE MERITS OF THE DEFENDANTS' SUMMARY JUDGMENT MOTION, THE TRIAL COURT ERRED IN MISAPPLYING RELEVANT PRINCIPLES OF CONTRACT LAW TO THE UNAUTHENTICATED AND INADMISSIBLE EVIDENCE PRESENTED BY THE DEFENDANTS, THUS WARRANTING REVERSAL.

(i) Defendants' assertion that the plaintiff claimed he was a partner with Maraventano in [Jimmy and the Parrots] is

10

a fictitious construct designed to confuse and mislead the Court.

(ii)  Plaintiff has shown that a valid and enforceable agreement for permanent employment was formed between the parties in 2002.

(iii)  The trial court erred in relying on a vague, ambiguous and unauthenticated hearsay document to hold that all of the plaintiff's claims were barred under the applicable statute of limitations.

(iv)  The trial court erred in holding that the doctrines of laches, equitable estoppel and waiver were applicable to the plaintiff's claims.

(v)  The trial court erred in holding that the plaintiff's claim of theft of intellectual property had no factual foundation.

POINT III

THE TRIAL COURT'S ERRONEOUS GRANT OF SUMMARY JUDGMENT SHOULD BE REVERSED AS A MATTER OF FAIRNESS AND DUE PROCESS AS PLAINTIFF'S PRIOR ATTORNEY'S INCOMPETENCE DEPRIVED HIM OF AN OPPORTUNITY TO BE HEARD BELOW AND HE SOULD [sic] NOT BE PENALIZED FOR THAT ATTORNEY'S MISTAKES.

POINT IV

THE TRIAL COURT ERRED IN FAILING TO DISMISS THE PLAINTIFF'S MOTION TO QUASH

AND FOR OTHER RELIEF AS SAME WAS
UNSUPPORTED BY ANY EVIDENCE, IN
VIOLATION OF RULE 1:6-6.

POINT V

THE TRIAL COURT ERRED IN DENYING AS
MOOT THE PLAINTIFF'S CROSS-MOTION TO
EXTEND AND COMPEL DISOVERY [sic] AS THE
DEFENDANTS' SUMMARY JUDGMENT MOTION
WAS PREMATURE.

II.

We review an order granting summary judgment de novo, applying the

same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017).

Summary judgment must be granted if "the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact challenged and that

the moving party is entitled to a judgment or order as a matter of law."

Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224

N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).  A genuine issue of material fact,

precluding summary judgment, exists if "the competent evidential materials

presented, when viewed in the light most favorable to the non-moving party,

are sufficient to permit a rational factfinder to resolve the alleged disputed

issue in favor of the non-moving party."  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"Whether a particular cause of action is barred by a statute of limitations is determined by a judge rather than a jury."  Est. of Hainthaler v. Zurich Com. Ins., 387 N.J. Super. 318, 325 (App. Div. 2006).  To the extent defendants' summary judgment motion raised a legal question about application of the statute of limitations, we also review that issue de novo.  D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"Statutes of limitations are essentially equitable in nature, promoting the timely and efficient litigation of claims."  Montells v. Haynes, 133 N.J. 282, 292 (1993) (citing Ochs v. Fed. Ins. Co., 90 N.J. 108 (1982)).  As our Supreme Court has stated:

> The purposes of statutes of limitations, oft-repeated by this Court, are two-fold: (1) to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims, and (2) to penalize dilatoriness and serve as a measure of repose.
>
> [Gantes v. Kason Corp., 145 N.J. 478, 486 (1996) (quoting Rivera v. Prudential Prop. & Cas. Ins. Co., 104 N.J. 32, 39 (1986)).]

A-4801-18

We agree plaintiff's claims were barred by applicable statutes of limitation. Relevant here, N.J.S.A. 2A:14-1 provides, "[e]very action at law . . . for recovery upon a contractual claim or liability, express or implied, not under seal . . . shall be commenced within [six] years next after the cause of action shall have accrued."

Plaintiff 's complaint alleges causes of action for breach of contract, fraud, misappropriation of intellectual property, unjust enrichment, conversion and breach of the implied covenant of good faith and fair dealing. Each is subject to N.J.S.A. 2A:14-1's six-year statute of limitations. See Crest-Foam Corp. v. Aetna Ins. Co., 320 N.J. Super. 509, 517 (App. Div. 1999) (quoting N.J.S.A. 2A:14-1) (providing that "In New Jersey, causes of action based on contractual claims must be brought within six years 'after the cause of any such action shall have accrued.'"); D'Angelo v. Miller Yacht Sales, 261 N.J. Super. 683, 688 (App. Div. 1993) (providing that common law fraud claims "may be brought within six years of accrual."); Dynasty Bldg. Corp. v. Ackerman, 376 N.J. Super. 280, 287 (App. Div. 2005) (applying a six-year statute of limitation to a claim for conversion although the statute had not expired on the facts of that case); Baer v. Chase, 392 F.3d 609, 622 (3d Cir. 2004) (providing that a six-year statute of limitations governs quasi-contract claims); Flemming v.

14

Ronson Corp., 107 N.J. Super. 311, 315-16 (Law Div. 1969) (misappropriation of an idea sounds in quasi-contract) and Goldsmith v. Camden Ctny., 408 N.J. Super. 376, 382 (App. Div. 2009) ("Unjust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability.") (quoting Nat'l Amusements, Inc. v. N.J. Tpk. Auth., 216 N.J. Super. 468, 478 (Law Div. 1992)). Other claims are contract related. See Noye v. Hoffmann-LaRoche, Inc., 238 N.J. Super. 430, 432 (App. Div. 1990) (providing the implied covenant of good faith and fair dealing is implied in every contract).

Tort actions have a two-year statute of limitations. Under N.J.S.A. 2A:14-2(a) "every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued[.]" The fraudulent concealment claim was subject to the shorter two-year statute of limitations. See Rosenblit v. Zimmerman, 166 N.J. 391, 406 (2001) (describing the "tort" of fraudulent concealment in the context of litigation). The negligent misrepresentation claim may be subject to this shorter statute of limitations. See Carroll v. Cellco P'ship, 313 N.J. Super. 488, 502 (App. Div. 1998) (providing the elements of negligent

A-4801-18

misrepresentation include negligence made in connection with a statement, reliance and injury).

Viewing the evidence in a light most favorable to plaintiff, in this case plaintiff acknowledged that by 2008, he knew he was not being compensated as he thought he should be under the 2002 agreement to share net profits equally. Plaintiff testified to this in his deposition. The email from Seltzer corroborated plaintiff's claim that defendant was not being transparent about the finances as early as 2008. However, plaintiff's complaint, alleging a breach of the 2002 agreement, was not filed until January 2018, which was more than six years after he became aware defendant was not following the agreement. The trial court did not err in concluding the claims subject to a two-year or a six-year statute of limitations were barred given these undisputed facts.

The trial court also found that equitable defenses applied to bar plaintiff's claims. These included laches, equitable estoppel and waiver. For laches to apply, the "key factors to be considered . . . are the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.'" Knorr v. Smeal, 178 N.J. 169, 181 (2003) (quoting Lavin v. Bd. of Educ., 90 N.J. 145, 152 (1982)). A "[w]aiver under New

Jersey law 'involves the intentional relinquishment of a known right and thus it must be shown that the party charged with the waiver knew of his or her legal rights and deliberately intended to relinquish them.'" Spaeth v. Srinivasan, 403 N.J. Super. 508, 514 (App. Div. 2008) (quoting Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 291 (1988)). Equitable estoppel means

> the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse[.]
>
> [Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 449 (1966).]

We agree that plaintiff's delay in bringing these claims implicated these equitable defenses. In this case, the facts showed that plaintiff was aware at least from 2008 that he was not being paid in accord with the agreement that he says was formed in 2002. He delayed in filing suit for the next ten years. Whether characterized as laches, waiver or estoppel, plaintiff's delay was such that it would be unfair to have such stale claims proceed. This is not in accord with the purpose of statutes of limitations nor consistent with the equitable principles that undergird the equitable defenses applied by the trial court.

Plaintiff argues the trial court erred in granting summary judgment because defendants' motion was not supported by competent evidence. Plaintiff argues defense counsel attached documents to his memorandum of law without any supporting certifications. He contends the trial court should have dismissed the motion based on a lack of evidence.

Rule 4:46-2(a) sets forth the requirements for a summary judgment motion. "The motion for summary judgment shall be served with a brief and a separate statement of material facts with or without supporting affidavits." R. 4:46-2(a). Rule 4:46-2(c) provides:

> The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
>
> [R. 4:46-2(c) (emphasis added).]

For motions based on facts not appearing of record or not judicially noticeable, Rule 1:6-6 provides:

> the court may hear it on affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify and which may have annexed thereto certified copies of all papers or parts thereof referred to therein.

A-4801-18

[R. 1:6-6.]

Thus, if the party moving for summary judgment relies on materials other than the pleadings, depositions, answers to interrogatories, or admissions on file, those materials must be supported by an affidavit or appropriate certification. See R. 1:4-4(b).

Defendants submitted a statement of material facts in support of their motion for summary judgment that was certified by counsel. The statement cited to the complaint, depositions of plaintiff, defendant and Seltzer, the exhibits marked during the depositions, and the certificate of incorporation for defendant Yeamon, Inc. The referenced documents were attached to the memorandum of law, except Yeamon's certificate of incorporation, which was annexed to a certification of defense counsel. Defendant therefore did not supply materials outside the record. It was proper for the trial court to base its decision on this statement of material facts, the pleadings, depositions and materials referenced in the deposition and certification.

Plaintiff alleges the trial court erred by not considering defendant's continuous pattern of wrongful conduct for more than ten years. We disagree. The gravamen of plaintiff's complaint is that there was an agreement in 2002 to equally share proceeds once expenses were deducted, and that was breached

as early as 2008.  That defendant may have been consistent in violating this "agreement" until 2016 does not mean plaintiff's claim for breach of contract accrued each year.  Plaintiff cites no authority to extend the continuing violation theory of tort law to these contract-based claims.

Plaintiff argues that defendant's fraudulent concealment created an equitable tolling of the statute of limitations which allowed him to file in 2018.  However, plaintiff's deposition testimony made clear he was aware as early as 2008 that he was not being paid as he thought was appropriate under the alleged agreement.  Plaintiff did not allege he was unaware; he alleged he did not say anything about what he knew.

Plaintiff argues that "a valid and enforceable contract for permanent employment was formed in 2002" when defendant and he verbally agreed to share equally in the Band's net compensation.  However, his contract argument before the trial court was that there was a valid and enforceable agreement made in 2002, not that he had permanent employment.

"It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great

20

public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

We decline to address this issue raised for the first time on appeal. It also is not necessary to address it because the claims are barred by the statutes of limitation.

Plaintiff argues the summary judgment order should be reversed as a matter of fairness and due process because the incompetence of his prior attorney deprived him of an opportunity to be heard. We disagree. The appropriate recourse for a civil litigant who is disappointed with their counsel's performance is "in an action for professional malpractice or a complaint with the appropriate attorney disciplinary authority." Advanced Fluid Sys., Inc. v. Huber, 381 F. Supp. 3d 362, 382 (M.D. Pa. 2019).

Plaintiff argues the trial court erred by not dismissing plaintiff's motion to quash because the motion was not supported by competent evidence. Plaintiff also argues the trial court erred by denying as moot his cross-motion to extend and compel discovery, and because discovery was not complete, summary judgment was premature. We incorporate our prior discussion, adding only that the parties had ample time for discovery.

In plaintiff's reply brief, he alleges defendants included documents in their appendix that were not presented to the trial court. These include a June 20, 2017 pro se complaint filed by plaintiff in the special civil part, the August 21, 2017 order and decision that dismissed the pro se complaint without prejudice, defendants' March 8, 2018 motion to dismiss the January 25, 2018 complaint, the March 29, 2018 order and decision that denied defendants' motion to dismiss, defendants' April 30, 2018 answer, and defendants' Statement of Material Facts which he alleges was altered for purposes of the appeal.

We note the motions, orders and decisions were all filed under the same docket number (L-28-18) as was the answer. The case was before the same trial judge. There was no reason for the trial judge to exclude consideration of the materials in the file or for the material to be excluded here. However, we have not relied on the statement of material facts in defendants' appendix that references "admissions," which plaintiff asserts was submitted for the first time on appeal. We considered the version of the statement that was submitted in support of the summary judgment motion.

Plaintiff also alleges defendants never offered Rotella's affidavit in support of the summary judgment motion. It was part of plaintiff's cross-

A-4801-18

motion to extend discovery, which was also before the trial judge when he heard the summary judgment motion. There was no reason for the trial court to exclude consideration of this affidavit.

After carefully reviewing the record and the applicable legal principles, we conclude that plaintiff's further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4801-18